## PROCTOR v. ANDOVER.

A highway, laid out for the accommodation of an individual by the Selectmen, although subject to gates and bars, is still a public highway, and all persons having occasion are entitled to use it, and the town, being bound to keep it in suitable repair, is liable for special damages caused by want of such repairs.

Where one terminus of a way applied for is at or near the house of A., the house itself is the terminus, and the proceeding is not void for uncertainty. The objection that part of the way was laid out wider than the petition prayed for, can not be urged by the town in a suit for injuries caused by want of repairs in the way.

Where it is claimed that the laying out was not based upon the judgment that the way was necessary, but upon an improper agreement, the proof of that fact must be clear and explicit, to control the presumption that it was rightly done.

THIS is an action on the case for injuries caused by defects in a highway, and is submitted upon an agreed statement of facts, as follows:

In 1852, Edwin Pierce, of Lawrence, Mass., bought of Jonathan Brown, of Andover, N. H., a wood and timber lot lying in said Andover, on the easterly part of Mount Kearsarge, for $2000. Pierce mortgaged to Brown to secure the payment of the purchase money. This purchase was made for the purpose of selling this timber and wood and the coal that could be made from the refuse of both, in Lawrence. At the time of purchase, this timber and wood were over a mile southerly from any accessible road leading to the Potter Place Depot.

Pierce, by a verbal agreement, took in his brother-in-law, Asa N. Brown, also of Lawrence, and who furnished one half of the funds, as an equal partner in the whole business. They then put up on this lot a small house (called the Asa N. Brown house), and necessary outbuildings for the business. Difficulties having arisen as to their transit over the land of Flint, Sleeper & Fellows, in 1854, they peti-

Proctor *v.* Andover.

tioned the selectmen of Andover, to lay out a public highway from the stake near the house of Asa N. Brown, to the other stake near the red house of John Fellows. These two stakes are the same ones described in the copy of the record of the laying out of a way for the accommodation of Pierce & Brown, hereinafter set forth.

A hearing was had, when said selectmen refused to lay out a public highway over said route. Pierce & Brown threatened to carry the case before the Commissioners. The selectmen, as a compromise, proposed that, if Pierce & Brown would waive their claim for a public highway, and would construct one for their accommodation, and erect and keep in repair gates between Pierce & Brown and Flint—Flint and Sleeper—Sleeper and Fellows—and one at the main highway near the Fellows red house, they would lay out a highway for their accommodation over said route, and pay from the treasury to Pierce & Brown $170, toward building the same as aforesaid ; and for the land damages. Pierce & Brown accepted this offer ; thereupon (due notice having been given to all landowners, but not to the mortgagee Brown) the following proceedings, as appear of record, were had.

" To the selectmen of the town of Andover in the County of Merrimack :—Your petitioners represent that, for their accommodation, there is now occasion for a new highway in said town—beginning at or near the dwelling-house of Asa N. Brown, in said town, and running thence northerly to a stake and stones in the highway near the red house (so called) of John Fellows, in said town. Therefore we respectfully request you to lay out, on the route above described, a highway of the width of twenty-five feet, and to cause a record thereof to be made according to law.

EDWIN PIERCE,<br>
ASA N. BROWN.

Andover, June 30th, 1854."

---
Proctor *v.* Andover.
---

Upon this petition the selectmen, after due notice, on the 25th of July, 1854, laid out a highway, beginning at the stake near the house of Asa N. Brown, and thence running through land of Pierce & Brown, Daniel Flint, George Sleeper, and John Fellows, by courses indicated in the return, to a stake in the road near John Fellows' red house—the highway to be three rods wide through the land of Pierce & Brown and Flint, and the rest of the way twenty-five feet, and to be constructed by the petitioners, and to be subject to four gates, to be erected and maintained by the petitioners, who, with their heirs and assigns, shall be liable for all damage done by leaving open the gates by themselves or others in their employ ; and awarded damages as follows :—To Pierce & Brown nothing, they giving their land ; Daniel Flint, $40 ; George Sleeper $25, and John Fellows $150.

The land damages were paid according to the award of the selectmen. The road was constructed by Pierce & Brown. The selectmen paid them $170 therefor ; Pierce & Brown built the four gates and kept them in repair till they failed and returned to Mass., in 1858, when they were, as they now are, completely insolvent. They in that year quitclaimed to the mortgagee, Brown. No business is now done on said lot ; only one man lives on it under said Brown, and he is insolvent. In 1859, said Proctor bought of said Fellows a meadow, near said red house, over which a few rods of said highway passes.

The first suit is case for $2000 damages received by Proctor from defects and obstructions in this highway, but not on that part which crosses his land. Before the injuries were received the town had been notified of the situation of the road, but did nothing. After Pierce & Brown left, the four gates referred to sometimes got open and were out of repair, by reason of which cattle went upon the plaintiff's meadows and did the $50 damage for which his second suit is brought.

Proctor *v.* Andover.

Before the damage was done the selectmen were notified of the situation of the gates, but refused to act because, as they said, it was no part of their duty. Through the insufficiency of these gates cattle went upon Fellows' meadows and damaged him $30; and for this he brings his suit against Brown, the former owner, mortgagee and releaser. Fellows' meadow joins that of Proctor. Before the damage was done to Fellows, Brown had been notified by Fellows to put the gates in repair, but refused to do it.

*Quimbie,* for the plaintiff.

*Shirley,* for the defendant.

BELLOWS, J. If the highway is legally laid out, it must be regarded, under our laws, as a public highway, and as such, all persons, whether living in the same town or elsewhere, having occasion to use it, have the right to do so, and the town is bound to keep it in suitable repair; and is, therefore, liable for any special damages that may be caused by a failure to perform this duty. Nor does the law make any distinction as to the duty of repairs and the liability for damages, between ways laid out for the accommodation of individuals chiefly, and other ways; and this must be regarded as settled by the case of *Metcalf* v. *Bingham,* 3 N. H. 459, recognized in *Clark* v. *B., C. & M. Railroad,* 24 N. H. 118. Upon the same principle, town-ways, in Massachusetts, are regarded as highways, within the act making towns liable for any injury caused by defects in them. *Jones* v. *Andover,* 6 Pick. 59; *Commonwealth* v. *Hubbard,* 24 Pick. 98. Indeed, it must very often happen, that roads, originally laid chiefly for the accommodation of individuals, become, in a short time, wholly public in their character, by the progress of settlements along their line, or simply by their extension and connection with other roads; and the legislature could never have

intended to exempt the towns from liability, in such cases, because originally laid out chiefly with a view to private use. Nor is there any such distinction between roads with gates or bars and those without, as to justify a different rule as to liability for want of repairs. In both cases, they are termed highways in the statutes, equally with ordinary highways, and in both cases the taking of land of private persons for such roads is clearly contemplated, and that is inconsistent with the idea that they are to be regarded as ways for private use. In fact, they are laid out under the same general authority, in respect to taking land of individuals, as ordinary highways; and the law which imposes the liability for special damages does it in terms broad enough to embrace these roads.

The law, authorizing the laying out roads subject to gates and bars, was passed January 1, 1849, and before that time there was no such provision; but the selectmen were empowered to lay out roads for the particular accommodation of individuals as well as the public in general, and the difference between the two mainly was, that in one case the damages were to be paid by individuals, and in the other by the towns. N. H. Laws, 1829, 574, sec. 2, 3; Laws of 1791 (Ed. 1815), 385, sec. 1.

It may be said that it would be unreasonable to impose this burthen upon towns, and so it might be said as to roads not subject to gates and bars; but the answer is, that this is so provided by the statutes, fairly construed; and, beside, the condition of the road, as to the extent of the repairs required, must depend upon the character and extent of its use; and if the burthen be unreasonable, it is in the power of the town to discontinue the road.

The question, then, is, whether this highway was laid out according to statute law, it not having been used for the term of twenty years. Upon this point it may be considered as settled, that the want of general jurisdiction in the selectmen who laid out the highway, is fatal, even

upon an inquiry of this character, where the proceedings are collaterally drawn in question. But it is otherwise where such general jurisdiction exists; but the tribunal has failed to obtain jurisdiction over some of the persons interested, by failure of notice, or where there are irregularities in the subsequent proceedings, as an improper assessment of damages, or a total failure to assess damages in a particular instance. Such defects and irregularities may be urged by the persons aggrieved, but not by the town or third persons, in a proceeding like this. *State v. Richmond,* 26 N. H. 232; *Haywood* v. *Charlestown,* 34 N. H. 23; *Hall* v. *Manchester,* 39 N. H. 295.

It is objected, in this case, that in the application for this way one of the termini is described in terms so loose and uncertain as to lay no legal foundation for the action of the selectmen. But we think that the language, " beginning at or near the house of Asa N. Brown," is not open to that objection, but it must be regarded as making the house itself the terminus. Had the words " or near" been omitted, no doubt would have been entertained; and there being no reference to any stake or other monument, to give effect to those words, they may very properly be wholly disregarded. Upon a similar ground, where, in a deed, the line was stated to be " about" so many rods in length, and no monument to fix it, it was held that the term " about" should be rejected. *Cutts* v. *King,* 5 Greenl. 482; *Purington* v. *Sedgeley,* 4 Greenl. 286. So where a line was described as eighty-five feet, " more or less." *Blaney v. Rice,* 20 Pick. 62. So where the course in a deed was described as " northerly," and nothing to define it further, a due north course was held to be the true construction. In all these cases, the terms indicated some uncertainty or want of exactness, but the conveyance was held good notwithstanding. Much more should it be so in cases like this, where, from their very nature, it being but an easement that is acquired, more latitude and less exact-

ness are to be expected. So in *Wiggin* v. *Exeter*, 13 N. H. 304, it is held that the road is not required to be laid in a direct line from one terminus to the other, as in the case of a deed of land.

It is sufficient, in these proceedings, if the laying out conforms substantially to the prayer of the petition; and it is enough if the way terminates substantially at the house of Mr. Brown ; and from any thing that now appears, we are unable to see that it does not. Indeed, terms like those in question here are often used in such proceedings. It was so in *Cole* v. *Canaan*, 29 N. H. 88, and in *Crosby* v. *Hanover*, 36 N. H. 404, and no objections taken in either case.

But it is urged that the petition prays for a road twenty-five feet wide, while it is actually laid out three rods wide, part of the way, and that this renders the whole proceeding void. This objection is made by the town, and not by the land-owners, Pierce & Brown and Flint, whose land was so taken beyond the twenty-five feet, and the question is whether any one can make this objection, in a collateral proceeding, but the person whose land has been so irregularly condemned. In *State* v. *Richmond*, it is held that, in case notice is not given to the land-owner, or damages are not awarded to him, he alone can object; and yet in such case his land is illegally taken. So in *Commonwealth* v. *Weiher*, 3 Met. 445, which was an indictment for a nuisance by the present occupant of land over which a road was laid, without due notice to the then owner, although the respondent did not claim under him.

In support of the objection here, it is urged that, as the petition asks for only twenty-five feet, the land-owner has no notice of a purpose to take more, and, therefore, as to the excess, it is the same as if there were no petition. But granting this to be true as to the land-owner, it still makes no stronger case than when he has no notice at all, or no damages whatever are awarded to him ; and still, in those

cases, he alone can complain; and so it would be, doubtless, in case the damages awarded were not paid before the making of the road.

In the case before us, it may be assumed that the damages were duly awarded and adjusted with Pierce & Brown and Flint, as nothing to the contrary is shown or suggested, and so far as this objection is based upon the idea of injury to the land owner, it can not be sustained. No other reason is suggested in the elaborate argument of the defendants' counsel, nor do we perceive any ground, either in public policy or positive statute, that requires us to hold the laying out to be void. On the contrary, we can conceive that great mischief might result from a rule which would make void the laying out of a highway throughout, by reason of the taking from a single owner more land than was covered in the petition, and especially in cases where the land-owner himself has assented or makes no objection.

In *Raymond* v. *Griffin,* 23 N. H. 345, it is held that the taking less land than is covered by the petition—that is, a road three rods wide where four rods were asked for, does not invalidate the proceedings. And the court holds that there is nothing in the statutes or the rules of court that requires a statement of the width of the way in the petition, and that the court is unable to see any mischief to the land-owner, or to the public, from such a departure from the petition. This then is an authority for the position that the conformity to the petition which in general terms is required, does not make it necessary to lay out the way of the precise width asked for in the petition. Nor do we see any reason for holding that, however or by whomsoever the objection might be taken, could the excess of land condemned at one point, affect the validity of the laying over land of another owner, where there was no such excess. And so is *Commonwealth* v. *Weiher,* 3 Met. 445, where it is held, in the case of a road laid out by

the side of a navigable water, that the mere fact that part of the road was below high water mark, and therefore without the jurisdiction of the selectmen, is no defense to an indictment for a nuisance in the part above high water mark. This goes upon the ground that the execution of an authority may be good in part and bad in part, and that in such case it will be void only as to the excess. 4 Kent's Com. 346, 386; *Adams* v. *Adams*, Cowp. 651. To the application of this principle, in cases where the boundaries between the sound part and the excess are clearly discernable, and there is no fraud, we see no objection. There might, it is true, be cases where, without the portion over which the selectmen had no jurisdiction to lay a road, the whole would be useless; and there, another question might arise, but it would not necessarily be so. Without undertaking then to decide the effect of this excess in the land taken, as to the land-owner himself, we are of the opinion that the town can not set it up as a defense in this case.

But it is said that the proceedings are rendered void by an improper agreement between the petitioners and the selectmen, and it appears that the selectmen having refused, on the application of Pierce & Brown, to lay out a public highway, the petitioners proposed or threatened to apply to the court of Common Pleas, and thereupon the selectmen proposed to lay out a way for their accommodation, subject to gates and bars, and to pay $170 toward the building of it and the land damages, and this was acceded to and the road laid accordingly. As we understand the case, the first application was for an ordinary public highway, and not subject to gates and bars, and the refusal to lay out that by no means implies that in their judgment a road for the petitioners' accommodation, subject to gates and bars, ought not to be laid. And we can see no objection to the proposition of the selectmen, as a substitute for the kind of way applied for, provided it was

based upon the opinion that such road was needed to such an extent as to justify the imposition of the burthen upon the town, and the taking of the land over which it was laid. And we think there is nothing in the case that would justify a legal conclusion that their action was based upon any other ground. Their return states that in their opinion there was occasion for a new highway, and we are to assume that their action was rightful until the contrary is shown.

It is true that the case finds that the proposition of the selectmen was made as a compromise; but this does not imply that in their judgment there was not a good occasion for the highway, nor is there any thing stated in the case that is inconsistent with their statement, that in their opinion there was occasion for the highway. On the contrary, it seems to us that notwithstanding they decided that an open public highway was not needed, they may have very properly thought otherwise in respect to a road subject to gates and bars; and we do not feel warranted in finding, on the facts before us, that their action was based upon any other ground. Every presumption is in favor of the regularity of their proceedings, and it is to be assumed that they in good faith adjudged the road to be necessary, until the contrary is clearly shown. So it is held in *Parke* v. *Boston*, 8 Pick. 228, where, on the laying out of a way by the mayor and aldermen of the city of Boston, a bond of an individual was taken by them to contribute toward the expense. On petition for a *certiorari* to set aside their proceedings, it was held that taking the bond would not vitiate the laying out, unless made the *basis* of their action, and there being no evidence of that beyond the taking of the bond, the petition was dismissed. A similar doctrine is held in *Copeland* v. *Packard*, 16 Pick. 217, where money was subscribed by individuals to pay part of the cost of a town way, and the fact communicated to the town before the vote of approval, it

was held that such vote was not thereby rendered invalid; and this was an action of trespass *quare clausum fregit.* In *Dudley* v. *Cilley,* 5 N. H. 558, which was an action upon a promissory note given to pay the damages awarded to the land-owner, it being required as a condition of the laying out, it was held that the note was without legal consideration. In this case, *Richardson,* C. J., holds that the laying out a highway for any other cause than common convenience and necessity is irregular, and that no court has authority to make donations toward the expense of building it, a condition upon which a road is to be laid out. This is a leading case in New-Hampshire, and carefully considered, and the prominent authorities cited are the Massachusetts cases of *Commonwealth* v. *Cambridge,* 7 Mass. 166; *Commonwealth* v. *Sawin,* 2 Pick. 547; and *Parke* v. *Boston,* 8 Pick. 218. The doctrine of these cases is, that highways ought to be laid out, and the land of individuals taken therefor, only when the public convenience and necessity demand it, and therefore, where the laying out is not based upon such demand, but upon the engagement of an individual to defray the expenses of making it, and so colorably for the use of the public, but really for a private person, the proceedings are irregular, and will be quashed on *certiorari.* In the case of *Commonwealth* v. *Sawin,* the proceedings were quashed, it appearing expressly in the judgment of the court of sessions, that the common convenience and necessity were not sufficient to warrant the laying out of the way wholly at the expense of the town, but considering the public use to be expected, and the agreement of individuals to build part of the road, it was laid out. The proceedings are quashed upon the ground distinctly, that the laying out is based upon the agreement to build part of the road. In this case, from the record itself, it is plain that there was no adjudication that the public convenience and necessity required the

road, and therefore the subsequent proceedings were void. So in *Jones* v. *Andover*, 9 Pick. 153.

The cases in this state of *Dudley* v. *Cilley*, 5. N. H. 558, and *Dudley* v. *Butler*, 10 N. H. 291, were actions upon notes given toward the expenses of making a road, in compliance with conditions expressly imposed in the laying out. In *Gurnsey* v. *Edwards*, 26 N. H. 224, it appeared that the road was laid out both because the selectmen thought the public good required it, and because the petitioners agreed to make it without expense to the town; but it was held that the petitioners were estopped to make this objection, and that the plaintiff in this suit, which was trespass *quare clausum fregit*, having derived his title since the laying out from one of the petitioners, was also estopped. In *Knowles' Petition*, 22 N. H. 361, the selectmen were induced to withhold their opposition by an agreement to indemnify the town against the expense; and it was held that such an agreement was clearly covinous and collusive, and the report was rejected. In all the cases cited to the point under consideration and in favor of the defendants' views, it was made clearly to appear that the laying out was based upon inducements offered by way of contribution toward the expense. But in the case before us we can find no satisfactory proof controverting the report that there was a legal occasion for the highway, and we should not be inclined to make a presumption against the facts stated in the report, from the fact that threats of further proceedings were made, or that an adjustment or compromise was finally agreed to. So is *State* v. *Newmarket*, 20 N. H. 519, citing *Smith* v. *Conway*, Ossipee, December term, 1844. Should it be shown by sufficient and competent testimony, that the road was in fact laid to avoid the expense of future litigation, and not because there was a lawful occasion for it, the question would then arise whether the exception could be taken in this form, and by the town, or whether the

laying out must be regarded as valid, until quashed upon *certiorari.* *State* v. *Richmond,* 26 N. H. 232 ; *State* v. *Canterbury,* 28 N. H. 195 ; *State* v. *Rye,* 35 N. H. 377 ; *White* v. *Landaff,* 35 N. H. 128 ; *State* v. *Weare,* 38 N. H. 314 ; but see *Gurnsey* v. *Edwards,* 26 N. H. 224.

In this case the selectmen clearly had jurisdiction of the subject matter and the parties, and if any defect existed, such as is suggested, it would seem to range itself under the head of irregularities. But on this point we give no opinion.

We agree with the counsel for the town that land of one person can not be taken for the private use of another ; but for the reasons already assigned, on the authority of *Metcalf* v. *Bingham,* before cited, we hold that though the road is laid primarily for the accommodation of individuals, yet all persons have the right to use it, and the town must keep it in repair. It must therefore be deemed to be a public highway, and the authority given by statute to take the land of another, and which has for more than half a century been freely exercised, can not be now regarded as unconstitutional.

Our opinion then is that it was the duty of the town to keep this way in suitable repair, and that for any injury to the plaintiff happening from want of repairs, the town is liable.

---

After this opinion was delivered, an amendment of the case was made by agreement of parties, and the final opinion given at the December term, 1861,

BELLOWS, J. The case as amended shows that the stake referred to as near the house of Mr. Brown was actually forty-two feet distant, and was treated as the terminus, and that the house was not so treated. The defendant thereupon contends that the laying out was void because it was not upon the route described in the

Proctor v. Andover.

petition, and we are called upon so to hold it to be as a matter of law. If the stake forty-two feet from the house can be regarded, under any circumstances, as at the house, we must, on the presumption that all things were rightly done, hold that it was so in this case, unless the facts disclosed indicate the contrary. And we are of the opinion that upon the naked fact that the stake which was at the terminus, was forty-two feet from the house, we can not hold, as matter of law, that it was not substantially at the house.

The course of the road may have been directly to the house and the stake set at the entrance of the door-yard, or at the gateway, and in such case it might properly be regarded as terminating substantially at the house.

The house, as a terminus, does not mark with precision the exact locality of the road prayed for, but it is ordinarily sufficiently certain for the purpose, though it is proper and necessary that, in laying out the road, the exact point at the house should be indicated by a stake or other monument; and we are not prepared to say that the road might not terminate at any part of what is usually included in the term house, without a departure from the petition.

Indeed, a rigid construction of the petition, in respect to the termini, is not called for by the nature of the proceeding, nor by usage, nor by the decided cases, as appears by the citations already made. Of the same nature are *State* v. *Rye*, 35 H. H. 368, and *Crosby* v. *Hanover*, 36 N. H. 404.

To defeat the laying out upon the ground that it does not conform to the petition, the departure should be substantial, so that the court can see that it is not the way prayed for; but we think that this is not shown by the amendment in this case. Nor do we think that any of the other points are affected by the amendment.