Request of Senate,
No. 4592.

## OPINION OF THE JUSTICES.

Submitted May 21, 1957.

Answer returned May 31, 1957.

The following answer was returned:

*To the Honorable Senate:*

The undersigned Justices of the Supreme Court submit the following answer to the question contained in your resolution filed May 9, 1957, with reference to Senate Bill No. 129, entitled "An Act relative to the federal aid highway act of 1956."

528

Under the proposed bill the State will pay the cost of relocating utility facilities necessitated by the construction of the "national system of interstate and defense highways" under the Federal-Aid Highway Act of 1956, on a matching basis. The bill provides that the utility shall relocate its facilities whenever it is determined by the Commissioner of Public Works and Highways that it is necessary to do so under the Federal-Aid Highway Act of 1956. The bill specifically provides "that the state shall reimburse the owner of such utility facilities for the cost of such relocation as a part of the cost of such construction or reconstruction." The bill defines utility and cost of relocation exactly as defined in s. 111 (b) and (c) of the Federal-Aid Highway Act of 1956, 70 Stat. 383, which reads in part as follows:

"Sec. 111. Relocation of Utility Facilities.

"(a) Availability of Federal Funds for Reimbursement to States.— Subject to the conditions contained in this section, whenever a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-Aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State for such cost in the same proportion as Federal funds are expended on the project: *Provided,* That Federal funds shall not be apportioned to the States under this section when the payment to the utility violates the law of the State or violates a legal contract between the utility and the State.

"(b) Utility defined. — For the purposes of this section, the term 'utility' shall include publicly, privately, and cooperatively owned utilities.

"(c) Cost of Relocation Defined. — For the purposes of this section, the term 'cost of relocation' shall include the entire amount paid by such utility properly attributable to such relocation after deducting therefrom any increase in the value of the new facility and any salvage value derived from the old facility."

Utility facilities are located within public highways with permission and license and are subject to reasonable regulation and control under the police power. *Bourget* v. *Company,* 98 N. H. 237; RSA 254:19-23. Consequently, utilities are required to relocate their facilities at their own expense whenever public health, safety or convenience require change to be made. *Detroit Edison Co.* v. *Detroit,* 332 Mich. 348; *Jamaica Water Supply Co.* v.

*New York,* 280 App. Div. 834, *aff'd* 305 N. Y. 560; 12 McQuillin, Municipal Corporations (3rd *ed.*) *ss.* 34.74, 34.77. "There has been no dissent from the common law rule as enunciated by numerous courts that, in the absence of a clear statutory mandate shifting the burden to the State, utilities are obliged to relocate at their own expense their facilities located in public highways when required to facilitate highway improvements." Public Utility Relocation Incident to Highway Improvement, House Document 127, *p.* 57 (84th Cong., Ist Session 1955). See also, RSA 254:23.

While the obligation to remove or relocate utility facilities is placed on the owner by the common law, the Legislature may change this rule. *New York City Tunnel Authority* v. *Consolidated Edison Co.,* 295 N. Y. 467. This principle was expressed in the recent *Opinion of the Justices,* 152 Me. 449, 455, decided May 6, 1957, as follows: "The State, however, may, in our view, pay for the cost of relocating such facilities, if it chooses to do so. The purpose of such expenditures is public in nature, and the extent and conditions under which the State may meet such costs are for the Legislature to determine." The common-law rule which places the costs of relocating utility facilities on the owner "specifically admits of legislative change." Relocation of Public Utilities Due to Highway Improvement — An Analysis of Legal Aspects, Highway Research Board Special Report 21, *p.* 40 (1955). If the Legislature decides to make such a change it would not be a violation of our Constitution, Part II, Article 5th or Part I, Article 10th. *Springfield* v. *Springfield Street Railway,* 182 Mass. 41; *Westchester Electric R. R.* v. *Westchester County Park Commission,* 255 N. Y. 297. See *Opinion of the Justices,* 88 N. H. 484, 490.

New Hampshire Constitution, Part II, Article 6-a reads as follows: "[Use of Certain Revenues Restricted to Highways.] All revenue in excess of the necessary cost of collection and administration accruing to the state from registration fees, operators' licenses, gasoline road tolls or any other special charges or taxes with respect to the operation of motor vehicles or the sale or consumption of motor vehicle fuels shall be appropriated and used exclusively for the construction, reconstruction and maintenance of public highways within this state, including the supervision of traffic thereon and payment of the interest and principal of obligations incurred for said purposes; and no part of such revenues shall, by transfer of funds or otherwise, be diverted to

any other purpose whatsoever." The principal question raised by the bill is whether reimbursement for costs of relocating utility facilities may be authorized out of the revenues specified in Article 6-a, *supra*.

The recent *Opinion of the Justices*, 152 Me. 449, 456, 457, returned May 6, 1957, holds that reimbursement can be made from general funds but expressed divided views as to whether reimbursement can be made from revenues restricted by their Constitution. It is to be noted that we have previously taken a broader view of what constitutes a highway purpose under our constitutional amendment than is the case in Maine. In *Opinion of the Justices*, 94 N. H. 501, 504, it was held that funds restricted by this amendment could be used to build or maintain off-street parking areas. "The obvious purpose and effect of the establishing of such parking areas is to remove parked cars from the highways, and we are clearly of the opinion that this is a highway purpose within the meaning of article 6-a." *Id.*, 505. In this state we have never considered a highway purpose to be limited solely to the transportation of persons and property on the highways. "The public easement includes all reasonable modes of travel and transportation which are not incompatible with proper use of the highway by others. *Graves* v. *Shattuck*, 35 N. H. 257, 265. It is not restricted to the transportation of persons or property in movable vehicles (*Cater* v. *Telephone Exchange Co.*, 60 Minn. 539, 544) but extends to every new method of conveyance which is within the general purpose for which highways are designed." *State* v. *Scott*, 82 N. H. 278, 279. To the same effect see *American Loan & Trust Co.* v. *General Electric Co.*, 71 N. H. 192, 200.

In view of the plenary power of the State over its highways, it may allow the location therein of any facilities not inconsistent with the superior rights of the traveling public. 10 McQuillin, Municipal Corporations (3rd *ed.*) *s.* 30.44. As science develops highways may be used for any improved methods for the transmission of persons, property, intelligence or other means to promote sanitation, public health and welfare. Such use of the public highways constitutes a proper highway purpose even though it may be new and is subordinate to the primary use of the highways for the traveling public. *Hobbs* v. *Long Distance Tel. & Tel. Co.*, 147 Ala. 393; Relocation of Public Utilities Due to Highway Improvement — An Analysis of Legal Aspects, Highway Research Board Special Report 21, *pp.* 10, 12 (1955). The relocation of

utility facilities is an integral part of highway improvements. The Legislature, if it chooses to do so, may validly declare that the relocation of utility facilities is part of the cost of highway relocation and reconstruction and shall be paid out of highway funds.

The answer to the question transferred is no.

> FRANK R. KENISON,
> LAURENCE I. DUNCAN,
> AMOS N. BLANDIN, JR.,
> EDWARD J. LAMPRON,
> STEPHEN M. WHEELER.

May 31, 1957.

*Morse, Hall, Morse & Gallagher* for the New England Telephone & Telegraph Company, for the bill.

*Orr & Reno* and *John W. Barto* for New England Power Company and Granite State Electric Company, also for the bill.

*Sulloway, Hollis, Godfrey & Soden* for Public Service Company of New Hampshire, Concord Electric Company, Exeter & Hampton Electric Company and New Hampshire Electric Company, also for the bill.