**UNITED STATES of America**

v.

**CERTAIN LAND IN the CITY OF PORTSMOUTH, COUNTY OF ROCKINGHAM, STATE OF NEW HAMPSHIRE, and John Russo, et al., and Unknown Owners.**

Civ. A. No. 2425.

United States District Court
D. New Hampshire.
May 11, 1965.

---

Paul L. Normandin, Asst. U. S. Atty., Concord, N. H., for plaintiff.

Franklin Hollis, Concord, N. H., for Allied New Hampshire Gas Co.

John C. Driscoll, Portsmouth, N. H., for City of Portsmouth, N. H.

CONNOR, District Judge.

The parties immediately concerned with this motion are the Government, the City of Portsmouth and Allied New Hampshire Gas Company (Allied). Parcel 2 is part of land taken by the Government for a new federal building in Portsmouth, and was at the time of the taking a parking lot owned by the City. Allied had a pipeline running under the lot, which it was required to relocate. Allied claims a portion of the compensation for Parcel 2 as damages sustained in relocating its pipeline. All parties have stipulated as to the fair value of the property, including the pipeline. The Government here is a mere stakeholder; by this motion, it asks the Court to determine whether it should pay the entire compensation to the City, or whether Allied is entitled to a certain portion.

Briefly, the history of the gas pipeline site is as follows. The line, at the time of the taking, lay beneath a portion of a city parking lot which formerly was a city street called Linden Street. Linden Street was platted and dedicated to the public in 1834. The pipeline was laid in Linden Street by Allied's predecessor, the Portsmouth Gas Light Company, in 1851 after it had received authority to do so under an Act of incorporation passed by the New Hampshire Legislature in 1850. There are no recorded grants of easement rights to Allied's predecessor from landowners who abutted Linden Street at the time, and apparently no record of any legal action by abutters against Allied's predecessor.

In 1954, the City took the property abutting Linden Street by eminent domain, discontinued the street and turned the area into a parking lot. The City, as owner of the lot thus claims the entire compensation. Allied contends, however, that maintenance of its pipeline under the former Linden Street was a "valuable right," for which it should receive compensation.

The common law rule, as endorsed by the New Hampshire Supreme Court in Opinion of the Justices, 101 N.H. 527, 132 A.2d 613 (1957), is that a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities at its own expense when necessary to make way for a proper governmental use of the streets. Under this rule, Allied would be precluded from recovery as the taking of Parcel 2 for a federal building is unquestionably a proper governmental use. But allied here contends, in effect, that under the circumstances present in this case it had obtained rights greater than those ordinarily obtained by utilities placing their facilities in streets and is, therefore, entitled to compensation for extinguishment of such rights.

Allied first contends that at the time the pipe was laid in 1851, Linden Street was not "publicly owned"; that rather, under New Hampshire law, fee title to the land under the street was retained

by the abutters against whom Allied could gain rights by long adverse use. In effect, Allied argues that it did obtain prescriptive rights against the abutters, that these rights were not extinguished by the City when it took over the abutters' title in 1954 and that, therefore, Allied is now entitled to share in the compensation paid the City.

■ The cornerstone of this contention is that Allied obtained a prescriptive easement for its Linden Street pipeline from the abutters. To establish such an easement, Allied must show, among other things, that its use of the street was adverse to the rights of the abutters for twenty years.

■ It is agreed that under New Hampshire law, abutters retain title to the fee underlying a street established by dedication. Linden Street was established in such a manner, so it may be assumed that fee title remained in the abutters. Also uncontested is the fact that Allied and its predecessors used the street for a period greatly in excess of twenty years. Much more troublesome, however, is whether Allied's use was "adverse."

■ One element of an adverse use is its trespassory character, a wrong which the fee holder can prevent or for which he can obtain damages by means of legal action. 28 C.J.S. Easements § 14, p. 654. For reasons that follow, the Court concludes that this element is missing here, that the abutters would have had no legal right to resist use of Linden Street by Allied or its predecessors.

■ It is clear that a "viatic use" of a street, that is, reasonable use for the purposes of travel and transport of goods and services, is no trespass against the rights of an abutter and he cannot maintain an action to prevent such a use or recover damages for it. See Lydston v. Rockingham County Light and Power Co., 75 N.H. 23, 70 A. 385 (1905). The question then becomes: Can the use of Linden Street by Allied and its predecessors for a gas pipeline be classed as a

viatic use, for which abutters would have no redress?

■ The modern answer to this question seems to be in the affirmative; i. e., that a pipeline laid under franchise is within the definition of a reasonable use of a public street, against which abutters retaining fee title to the street cannot complain. See 18 Am.Jur. 838. However, counsel for Allied has asked that this question be considered not in the light of the modern view, but rather that the Court should approximate the attitude a court would have adopted on this subject in the middle of the 19th Century, when an abutter might have brought suit to stop or recover for the placing of a gas main in Linden Street.

This is a difficult task since there is no New Hampshire decision from that era which might provide guidance, but perhaps it can be accomplished by reference to the statute of 1850 under which Allied's predecessor received its charter and its powers.

The Portsmouth Gas Light Company was incorporated by Chapter 1045 of the New Hampshire Session Laws of 1850. Section 3 of that chapter provided as follows:

"Said corporation shall have the right to lay gas pipes in any of the public streets or highways in the city of Portsmouth, the consent of the authorities of said city having first been therefor obtained, and to re-lay and repair the same, subject to such regulations as to the health and safety of the citizens and the security of public travel as may be prescribed by the authorities aforesaid."

Had an abutter brought suit against Allied's predecessor for trespass at the time the gas pipe was laid, the Court has no doubt that counsel for Allied's predecessor would have raised this statute in defense, perhaps arguing that by it the Legislature intended to include gas pipelines within the definition of viatic use of city streets and that, therefore, the

presence of the pipe laid pursuant to statute was not a trespass against the abutter.

If such a defense were raised, the question would arise whether the Legislature had power to provide for such use of streets. No early authority is available, but it seems that the New Hampshire Court has consistently attributed to the State very broad powers over use of roads within the State, requiring only that the powers be exercised in a reasonable and non-arbitrary fashion. See Opinion of the Justices, 94 N.H. 501, 51 A.2d 836 (1947); Opinion of the Justices, 81 N.H. 566, 129 A. 117, 39 A.L.R. 1023 (1925); State v. Aldrich, 70 N.H. 391, 47 A. 602 (1900).

The statute chartering Allied's predecessor was not an isolated piece of special legislation. The Portsmouth Gas Light Company was one of six incorporated by the Legislature with identical powers in June and July of 1850. This provides some basis to conclude that the Legislature had made a reasoned decision that use of streets for gas pipelines was in the public interest.

The earliest annotation available to the Court on the subject is in 56 American Reports 250 (1887). The annotation reveals that several 19th Century courts concluded that legislatures and other governing bodies could authorize installation of pipelines in city streets without compensation to abutters, as part of the public's easement thereon, in the interest of public health and welfare. While there were also cases to the contrary, those validating legislative power in this regard appear more persuasive and better reasoned.

Adoption of 19th Century attitudes does not require abandonment of logic, and therefore the Court concludes that Allied's predecessor could have successfully defended an action brought against it by an abutter, on the ground that laying gas pipeline in Linden Street was no trespass but a mere "viatic use," pursuant to an act of the Legislature.

Accordingly, the Court holds that since an abutter would have had no right against Allied or its predecessors in trespass, use of Linden Street for gas pipelines was not adverse to the abutters and, therefore, Allied has gained no prescriptive easement thereby.

An additional ground advanced by Allied in support of its claim for compensation rests on the statute chartering its predecessor, cited above. Allied argues that the charter right to lay pipes was a "valuable one" and if it is appropriated by the United States, Allied is entitled to compensation.

Obviously, the ability to lay pipe in streets is essential to the establishment of a profitable gas business, just as the right to erect poles or bury wires is essential to a profitable electric or telephone business. But as previously stated, the general rule is that a utility locates its facilities subject to the risk of removing and relocating them at its own expense to make way for a proper governmental use. The chartering statute cited by Allied is in reality no more than an ordinary franchise and confers no greater rights than are ordinarily granted to utilities, that is, a right to use streets subject to public necessity. It might be added that the Government is not appropriating Allied's right to lay its pipelines in the streets of Portsmouth, but is merely requiring Allied to move one such pipeline.

Upon the foregoing, the Court is of the opinion that Allied New Hampshire Gas Company is not entitled to compensation by the United States for removal of the pipeline from Parcel 2 and its relocation elsewhere. Accordingly, the Government is ordered to pay over the entire amount of agreed compensation to the City of Portsmouth.