Grafton
No. 84-118

FREDERICK W. KING
AND
CATHERINE D. KING

v.

TOWN OF LYME
AND
JAMES B. ARGENTATI

March 20, 1985

*Decato & Cirone P.A.*, of Lebanon (*R. Peter Decato* on the brief and orally), for the plaintiffs.

*Daschbach & Kelly P.A.*, of Lebanon (*Joseph F. Daschbach* and *Deborah J. Cooper* on the brief, and *Mr. Daschbach* orally), for the Town of Lyme.

*McNamara, Larsen & Schuster P.A.*, of Lebanon (*Mark A. Larsen* on the brief and orally), for James B. Argentati.

PER CURIAM. The central issue in this declaratory judgment action is whether the master erred in ruling that utilities of all kinds and descriptions could be installed for the benefit of the defendant James B. Argentati on his right of way over the plaintiff's property, without a payment of damages to the plaintiffs. We affirm the master's ruling.

The following facts are established in the record. In 1977, a dispute arose between Mr. Argentati and the plaintiffs in this action, Frederick and Catherine King, over Mr. Argentati's use of Alden Road, which is located in the town of Lyme and runs across and adjacent to the Kings' property, as access to his property. Thereafter, the parties entered into litigation, *James B. Argentati v. Frederick W. King and Catherine D. King*, E-77-044 (Grafton County Superior Court), to determine what access Mr. Argentati was to have to his property. The litigation resulted in a court-ordered settlement

decree which forms the basis for this appeal. The decree stated, in pertinent part:

> "The plaintiff [Mr. Argentati] and all persons claiming by, from and under him is [sic] divested of whatever interest he might have had in his individual capacity or as a member of the public to pass or repass across the property of the defendants [Mr. and Mrs. King] on a roadway [Alden Road] extending . . . across property of the [Kings] to property of the plaintiff . . . . The divestment of the plaintiff's rights to travel over and across said roadway is given notwithstanding the status of said roadway and whether or not such roadway is subsequently adjudged or acknowledged to be a public highway . . . ."

In return for the release of his rights to use Alden Road, Mr. Argentati was granted a permanent right of way easement across a portion of the Kings' property for access to and egress from his property. The decree provided: "The right-of-way . . . shall constitute a private right-of-way to be used as a means of access appurtenant to the land of the plaintiff and land of the defendants and for no other purposes."

In 1982, Mr. Argentati petitioned the selectmen of the town of Lyme, pursuant to RSA 231:161, to grant to the New Hampshire Electric Cooperative, Inc. a license or permit to extend electric lines to his property over Alden Road. On May 27, 1982, the town granted the petition.

The Kings then petitioned the superior court for declaratory and injunctive relief. They alleged (1) that Mr. Argentati was precluded from utilizing Alden Road by the 1977 order of the superior court; (2) that the town could not grant the requested utility license or permit because it was not the lawful owner of Alden Road; and (3) that the granting of the utility license or permit would decrease the value of their land. The Kings asked the court to determine the status of Alden Road, to enjoin the defendants from granting or utilizing a utility license or permit over Alden Road, and to enjoin New Hampshire Electric Cooperative, Inc. from extending power lines over Alden Road, without there first being an assessment of damages and payment thereof to the plaintiffs.

The case was referred to a Master (*Thomas M. Pancoast*, Esq.), who determined that Alden Road is a class VI highway, which, in 1955, was discontinued subject to gates and bars by a vote of the town of Lyme. Although the master found that the town of Lyme had the authority to grant a utility license or permit on Alden Road, he ruled that the 1977 superior court order divested Mr. Argentati

of the right to have power lines extended over Alden Road. He thus recommended that Mr. Argentati be enjoined from utilizing any utilities installed on Alden Road.

Nevertheless, reasoning that Mr. Argentati could not be enjoined from extending utilities over the right of way he obtained as a substitute for the rights in Alden Road of which he had been divested, the master concluded: "[T]here is no restriction or limitation upon the defendant Argentati's rights to install or cause to be installed upon the right of way . . . utilities of all kinds and descriptions, without payment therefor to the plaintiffs of any compensation or damages." The Superior Court (*Murphy*, J.) approved the master's report, and the Kings appealed.

On appeal, the plaintiffs first claim that the master erred in ruling that the town of Lyme had the authority to grant a utility license or permit on Alden Road. They advance two arguments in support of this claim. They argue that a town does not possess the statutory authority to grant rights to extend electric service over a highway discontinued subject to gates and bars, under the provisions of the subdivision relating to the granting of licenses and permits to install utility facilities in highways. They also argue that the extension of power lines is not a proper use of a highway which is located in a rural setting.

We turn first to the plaintiffs' claim that Alden Road is not a public highway subject to RSA 231:160, which provides that "[t]elegraph, television, telephone, electric light and electric power poles and structures . . . may be erected, installed and maintained in *any public highways* . . . ." (Emphasis added.)

It is the plaintiffs' position that a road discontinued subject to gates and bars is *not* a public highway. In support of their position, the plaintiffs cite RSA 231:45, which states that a class VI highway discontinued subject to gates and bars "shall not have the status of a publicly approved street."

The above-quoted language was added to RSA 231:45 by Section 2 of Laws 1969, chapter 332, "An Act Relative to the Improvement of Streets in Municipalities Wherein Zoning Has Been Adopted." The purpose of the act was to make it clear that towns were not responsible for maintaining highways discontinued subject to gates and bars. N.H.S. JOUR. 892–93 (1969). The act amended RSA 231:45 in the face of growing concern that many areas were opening up to development and that developers might try to force towns to improve highways discontinued subject to gates and bars. *Id.*

The language on which the plaintiffs rely is not applicable to the statutory provisions relating to the authority of a town to permit utilities to be installed in a public highway. Rather, the language

was intended to make it clear that a highway discontinued subject to gates and bars is not a publicly approved street for purposes of *zoning*. *Accord Metzger v. Brentwood*, 115 N.H. 287, 343 A.2d 24 (1975) (road discontinued subject to gates and bars is not a "right of way" as that term is used in town's zoning ordinance); *see also Metzger v. Town of Brentwood*, 117 N.H. 497, 374 A.2d 954 (1977) (same); *Bancroft v. Town of Canterbury*, 118 N.H. 453, 457, 388 A.2d 199, 203 (1978) (amendment intended to make it possible for planning boards to have jurisdiction over discontinued highways subject to gates and bars).

██ We long have held that roads subject to gates and bars are public highways. *Brown v. Brown*, 50 N.H. 538, 550–51 (1871); *Proctor v. Andover*, 42 N.H. 348, 351 (1861). As previously mentioned, the provision relating to the installation of utilities in highways grants the authority to erect such utilities "in any public highways." RSA 231:160. RSA 229:5 sets out and defines the classes of highways in this State. It specifically provides that "[c]lass VI highways shall consist of all other existing *public ways* and *shall include all highways* discontinued as open highways and made *subject to gates and bars* . . . ." RSA 229:5, VII (emphasis added). It is clear that under this court's prior holdings and the relevant statutory provisions, Alden Road is a public highway within the meaning of RSA 231:160 for utility purposes.

The plaintiffs next argue that because Alden Road is not a town maintained road, the town of Lyme does not have the authority to grant a utility easement on the road. As authority for their position, the plaintiffs cite RSA 231:161, I(a), which they contend limits a town's jurisdiction to authorize the installation of utilities to town *maintained* roads. In RSA 231:161, the legislature directed:

"Any . . . person, copartnership, or corporation desiring to erect or install any . . . poles, structures, conduits, cables or wires in, under or across any such highway, shall secure a permit or license therefor in accordance with the following procedure:

I. JURISDICTION.

(a) Town Maintained Highways. Petitions for such permits or licenses concerning town maintained highways shall be addressed to the selectmen of the town in which such highway is located . . . ."

RSA 231:161, I(a). The provision also sets forth the procedure in the case of a city maintained highway, RSA 231:161, I(b), and a State maintained highway, RSA 231:161, I(c).

The town does not dispute the fact that Alden Road is not maintained by it. *See* RSA 231:50 (towns not responsible for maintenance of roads discontinued subject to gates and bars). It is the town's position, however, that RSA 231:161, I(a) relates only to procedure and that the provision does not impose any limitation on its authority to grant utility licenses or permits.

■■ It is well established in this jurisdiction that the meaning of a statute "is determined from its construction as a whole and not by construction of isolated words and phrases." *State v. Smith*, 124 N.H. 509, 512, 474 A.2d 987, 989 (1984); *Arthur Lessard & Sons v. Kakides*, 116 N.H. 50, 51, 351 A.2d 61, 62 (1976). RSA 231:160 grants the *authority* to erect utilities and specifies that utility facilities may be installed or erected "in any public highway." RSA 231:161 sets out the *procedure* by which a person makes application for a permit or license to erect such facilities in "any such highway." These two provisions, read together, clearly authorize persons to be permitted to install utility facilities in any public highways.

The subparagraph which the plaintiffs contend limits the authority to grant licenses and permits is entitled "JURISDICTION" and establishes the jurisdiction of certain governmental entities over applications for the installation of utility facilities in public highways. The legislature used the word "maintained" to describe the entity which historically has had responsibility with respect to the highway in question. The subparagraph identifies the governmental entity to which application is made and is not intended to impose a limitation on the type of public highway for which a permit or license may be sought. The latter determination is made under RSA 231:160, the provision granting the *authority* to erect utility facilities.

■ In addition, the plaintiffs' argument that a utility easement is not a proper highway use in a rural area is without merit. The legislature has determined that the erection of utility facilities is a proper highway use and has authorized their installation in *any* public highway. RSA 231:160. Also, this court, in considering a bill relative to the cost of the relocation of any public, private or cooperatively owned utility facilities, has opined: "In this state we have never considered a highway purpose to be limited solely to the transportation of persons and property on the highways." *Opinion of the Justices*, 101 N.H. 527, 530, 132 A.2d 613, 615–16 (1957).

■■ It is clear that neither the legislature nor this court has ever recognized a distinction between highways located in rural areas and any other public highway. Furthermore, because both the

legislature and this court have determined that the installation of utility facilities is a proper highway use, the use of a highway for such facilities does not constitute an additional servitude which would require the payment of damages to abutting landowners. *See United States v. Certain Land in City of Portsmouth,* 247 F. Supp. 932, 934–35 (D.N.H. 1965). Accordingly, we conclude that the master did not err in ruling that the town of Lyme had the authority to issue a license or permit to install utility facilities over Alden Road.

The plaintiffs also claim error in the master's determination that Mr. Argentati had the right to install utilities of all kinds and descriptions on the right of way he obtained in return for his releasing his rights to use Alden Road. Finding that the right of way was obtained as a substitute for the rights Mr. Argentati had in Alden Road and that the right of way was not limited, the master concluded that the rule in *Sakansky v. Wein,* 86 N.H. 337, 339–40, 169 A. 1, 2 (1933), permitted Mr. Argentati "to install or cause to be installed upon the right of way . . . utilities of all kinds and descriptions, without payment therefor to the plaintiffs of any compensation or damages."

On appeal, the plaintiffs argue that the master misinterpreted the 1977 court-ordered settlement decree creating the right of way easement. The plaintiffs contend that the decree, both in the divestment of Mr. Argentati's rights in Alden Road and in the creation of the easement, concerned only the right to pass to and from their property and did not contemplate the extension of utility services.

At the outset, it is important to note that were we to accept the plaintiffs' argument that the 1977 decree did not contemplate the extension of utility easements, we also would have to conclude that the decree did not divest Mr. Argentati of his right to erect utility facilities on Alden Road and, therefore, he could not be enjoined from utilizing utilities installed on the road. We do not, however, accept the plaintiffs' argument.

 Even if we assume that the 1977 decree did not contemplate the installation of utility facilities, "it is well established that an easement may be maintained for a purpose not contemplated when it was created." *Kalman v. Hutcheson,* 111 N.H. 36, 41, 276 A.2d 260, 264 (1971). "In this state the respective rights of dominant and servient owners . . . are determined by reference to the rule of reason." *Sakansky v. Wein,* 86 N.H. at 339, 169 A. at 2. The use to which an easement may be put depends upon what is reasonable, under all of the surrounding circumstances. *Delaney v. Gurrieri,* 122 N.H. 819, 821, 451 A.2d 394, 395 (1982); *Sakansky v. Wein, supra* at 339–40, 169 A. at 2. The application of this rule raises a

question of fact to be determined by the trier of fact. *Delaney v. Gurrieri, supra* at 821, 451 A.2d at 395; *Sakansky v. Wein*, 86 N.H. at 339, 169 A. at 2.

In the instant case, the plaintiffs do not argue that the master erred in applying the "reasonable use" theory. In fact, they do not even contend that the installation of utility facilities is not a reasonable use of the right of way easement at issue. "It is well settled that we will not set aside a master's determinations absent a showing of abuse of discretion." *Parker v. Parker*, 122 N.H. 658, 662, 448 A.2d 414, 416 (1982). Accordingly, we affirm the master's ruling.

In view of the foregoing analysis, we find to be without merit the plaintiffs' assertion that the master's ruling amounted to a taking without just compensation. *See* N.H. CONST. pt. I, art. 12; RSA ch. 371.

*Affirmed.*

BATCHELDER, J., did not participate in the decision of this case.