# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0322, <u>Society for the Protection of New Hampshire Forests v. Northern Pass Transmission, LLC</u>, the court on January 30, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The plaintiff, Society for the Protection of New Hampshire Forests, appeals an order of the Superior Court (<u>MacLeod</u>, J.) granting summary judgment in favor of the defendant, Northern Pass Transmission, LLC.  In its petition for declaratory and injunctive relief, the plaintiff sought to establish that the defendant's proposed plan, for which the defendant has not yet received regulatory approval, to install an underground electrical transmission line within a state highway easement over a portion of the plaintiff's land, exceeds the scope of the highway easement.  In granting summary judgment, the trial court ruled that use of the right-of-way for the electrical line would, as a matter of law, fall within the scope of the easement.  On appeal, the plaintiff argues that the trial court erred by: (1) declining to address, on ripeness grounds, whether the proposed installation will result in inverse condemnation, and not finding that it in fact will result in inverse condemnation; (2) not finding that a genuine issue of material fact exists as to whether the proposed installation will exceed the scope of the easement pursuant to the "rule of reason"; (3) not ruling that the anticipated installation will exceed the scope of the easement as a matter of law; (4) stating that the easement is not limited to "viatic" use; (5) allegedly "treat[ing] the dispute as a simple licensing matter"; and (6) allegedly denying the plaintiff a forum and remedy.

In reviewing an order granting summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from such evidence, in the light most favorable to the nonmoving party.  <u>Pike v. Deutsche Bank Nat'l Trust Co.</u>, 168 N.H. 40, 42 (2015).  We review the trial court's application of law to the facts <u>de novo</u>.  <u>Id</u>.  If our review of the evidence discloses no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law, we will uphold the trial court's order.  <u>Id</u>.  An issue of fact is "material" if it affects the outcome of the case under applicable substantive law.  <u>Lynn v. Wentworth By The Sea Master Ass'n</u>, 169 N.H. 77, 87 (2016).

The record in this case establishes that the defendant has submitted an application to the New Hampshire Site Evaluation Committee to install a high voltage transmission line and related facilities.  The proposed project would consist of a single circuit 320 kV high voltage direct current transmission line carrying hydroelectric-generated power from the Canadian border to Franklin, where it would be linked to a 345 kV alternating current transmission line that terminates in Deerfield.  In total, the line would extend 192 miles from the Canadian border to Deerfield.  A portion of the line would be buried underground within the bounds of existing public highway easements.

The buried portion of the proposed project would include a section of Route 3 in Clarksville that passes through land owned by the plaintiff.  At that point, Route 3 is a four-rod road, and is maintained as a Class I state highway. The section of Route 3 at issue was laid out by the selectmen of Clarksville, Stewartstown, and Pittsburgh in 1931 after finding that "for the accommodation of the public there is occasion for a new highway."  The plaintiff's predecessor-in-title was paid $1,000 for the right-of-way.  The defendant has applied for a license from the New Hampshire Department of Transportation (DOT) to bury the proposed transmission line between fifty and seventy feet below the surface of Route 3.  See RSA 231:160, :161 (2009).

The plaintiff filed the present action seeking a declaratory judgment that the proposed use of the right-of-way "exceeds the scope of the public right-of-way and cannot be lawfully undertaken without [the plaintiff's] permission," and an injunction "preventing [the defendant] from conducting any activities on [the plaintiff's property] to advance or implement" the proposed project.  The plaintiff did not specify in its petition any specific harm or unreasonable burden that the proposed use will impose upon its property.  In granting the defendant summary judgment, the trial court ruled that, pursuant to statute and longstanding precedent, an underground utility is within the scope of a public highway easement as a matter of law, and that the DOT has exclusive authority to determine whether to allow the proposed use.

At the outset, we agree with the trial court that "whether the DOT would effect a taking of [the plaintiff's] property if it granted [the defendant] a license to install the transmission line underneath the stretch of Route 3 at issue is purely speculative" and, thus, is not ripe for adjudication.  "Ripeness relates to the degree to which the defined issues in a case are based on actual facts and are capable of being adjudicated on an adequately developed record."  Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 455 (2015) (quotation and brackets omitted).  In determining whether a claim is ripe, we evaluate the fitness of the claim for judicial determination and the hardship to the parties caused by the court's decision not to address an issue.  Id.  A claim is fit for determination when it raises primarily legal issues, it does not require further factual development, and the challenged action is final.  Id.  In evaluating hardship on the parties, we examine whether the contested action imposes an

2

impact upon the parties that is sufficiently direct and immediate to render the issue appropriate for judicial review at this stage.  Id.

Whether any regulatory action results in an unconstitutional taking of private property is a question that turns upon the specific facts of that case.  See Burrows v. City of Keene, 121 N.H. 590, 598 (1982).  Here, because the DOT has not yet acted upon any license application, whether its potential approval of a license might result in inverse condemnation is too speculative a question to be fit for judicial determination.  Moreover, as the trial court observed, the parties have the right both to an administrative appeal and an appeal to this court from any adverse licensing decision.  See RSA 21-L:14-:15, :18 (2012 & Supp. 2016); RSA 541:6 (2007).  Thus, the decision not to address whether a future licensing determination might result in inverse condemnation does not result in hardship.  Under the circumstances, we conclude that the trial court did not err by declining to address the constitutionality of a future licensing decision by the DOT.  We, likewise, decline to address whether any future license granted by the DOT might result in inverse condemnation.

By contrast, whether the defendant's proposed use of the public highway easement falls within the scope of the highway easement, as discussed below, does not require significant factual development.  Thus, although the trial court observed that "[t]he extent of [the defendant's] actual use of the public right-of-way and whether such use exceeds the scope of the public highway easement is similarly speculative," we conclude that it properly addressed whether the proposed use would exceed the scope of the easement.

We have long recognized that public highway easements may be used for the placement of public utilities, including electrical transmission lines.  See McCaffrey v. Company, 80 N.H. 45, 45-46 (1921); Trust Co. v. Electric Co., 71 N.H. 192, 200 (1901).  As we have explained:

> In this state we have never considered a highway purpose to be limited solely to the transportation of persons and property on the highways.  "The public easement includes all reasonable modes of travel and transportation which are not incompatible with proper use of the highway by others.  It is not restricted to the transportation of persons or property in moveable vehicles but extends to every new method of conveyance which is within the general purpose for which highways are designed." . . .
>
> In view of the plenary power of the State over its highways, it may allow the location therein of any facilities not inconsistent with the superior rights of the traveling public.  As science develops highways may be used for any improved methods for the transmission of persons, property, intelligence or other means to promote sanitation, public health and welfare.  Such use of the

3

public highways constitutes a proper highway purpose even though it may be new and is subordinate to the primary use of the highways for the traveling public.

Opinion of the Justices, 101 N.H. 527, 530 (1957) (quoting State v. Scott, 82 N.H. 278, 279 (1926)) (citations omitted).

Thus, in King v. Town of Lyme, 126 N.H. 279 (1985), we summarily rejected the plaintiff's argument that "a utility easement is not a proper highway use in a rural area," id. at 284, and observed that, because "the installation of utility facilities is a proper highway use, the use of a highway for such facilities does not constitute an additional servitude which would require the payment of damages to abutting landowners," id. at 285. We decline the plaintiff's invitation to disregard King as mere dicta. To the contrary, it is consistent with longstanding New Hampshire law.

Similarly, we long ago recognized that "[w]hether the fee of the street be in the municipality in trust for the public use, or in the adjoining proprietor, it is, in either case, of the essence of the street that it is public, and hence under the paramount control of the legislature as the representative of the public." State v. Kean, 69 N.H. 122, 128 (1896). Thus, we have observed that in RSA 231:160, the legislature has "grant[ed] the authority to erect utilities and specifie[d] that utility facilities may be installed or erected 'in any public highway,'" while in RSA 231:161, it has "set[] out the procedure by which a person makes application for a permit or license to erect such facilities in 'any such highway.'" King, 126 N.H. at 284. RSA 231:160 specifically provides:

> Telegraph, television, telephone, electric light and electric power poles and structures and underground conduits and cables, with their respective attachments and appurtenances may be erected, installed and maintained in any public highways and the necessary and proper wires and cables may be supported on such poles and structures or carried across or placed under any such highway by any person, copartnership or corporation as provided in this subdivision and not otherwise.

Under RSA 231:161, I(c), "[a]ny such person, copartnership or corporation desiring to erect or install any such . . . conduits, cables or wires in, under or across any" class I state highway "shall secure a permit or license therefor" by submitting a petition with the commissioner of the DOT, "who shall have exclusive jurisdiction of the disposition of such petitions."

We conclude that use of the Route 3 right-of-way for the installation of an underground high voltage direct current electrical transmission line, with associated facilities, falls squarely within the scope of the public highway easement as a matter of law, and that such use is within the exclusive

4

jurisdiction of the DOT to regulate. Through RSA 231:160 and RSA 231:161, the legislature has definitively found, consistent with our case law, that the use of highway easements for utility transmission lines is a reasonable use of the easement.

We also conclude that, upon this record, there is no genuine issue of material fact. The mere fact that the public utilities regulatory environment may have changed since 1931, and that the defendant may profit from the sale of electricity transmitted through the proposed line to out-of-state buyers, does not create a genuine issue of material fact as to whether use of the right-of-way for an underground electrical transmission line is within the scope of the highway easement. Cf. King, 126 N.H. at 284 (finding argument that electrical utility was not proper use of public highway in rural area to be without merit based upon RSA 231:160 and this court's case law). Nor does the record provided on appeal contain any evidence, by affidavit or otherwise, establishing how the proposed use of the highway easement will specifically harm or otherwise unreasonably burden the plaintiff's property beyond the burden already created by the presence of Route 3, or any affidavit "showing specifically and clearly reasonable grounds for believing" that the plaintiff will be able to produce such evidence at trial. RSA 491:8-a, II (2010); see Heartz v. City of Concord, 148 N.H. 325, 332 (2002); Lussier v. N.E. Power Co., 133 N.H. 753, 758 (1990). Because use of the easement for an underground electrical line falls within the scope of the public highway easement, because there is no dispute that the 1931 highway layout created a public highway easement, and because there is no evidence that the proposed use will unreasonably burden the plaintiff's property, there is no need to apply the "rule of reason." See Heartz, 148 N.H. at 331-32; Lussier, 133 N.H. at 757-58.

We reject the plaintiff's argument that RSA 231:167 (2009), which provides that "any person . . . damaged in his estate by . . . the installation of any such underground conduits or cables or by installing any wire . . . or other apparatus in or under the highway . . . may apply to the selectmen to assess his damages . . . [in the manner] provided [for] in the . . . laying out [of] highways," is inconsistent with this analysis. As the defendant correctly observes, this provision "presupposes that utilities are within the scope of the public highway easement," and "merely recognizes that there may be instances when persons . . . may incur some impact or injury in connection with a utility's use of the easement, . . . and provides a statutory remedy in those instances." See Darling v. Company, 74 N.H. 515, 516 (1908) (noting that predecessor to RSA 231:167 applied "only to acts done by virtue of a license" and provided for "compensation for injuries done to property . . . by virtue of a license" to install a utility in a public highway). As noted above, the plaintiff has not offered proof in the summary judgment record that the proposed project will specifically harm its property.

Likewise, we reject the plaintiff's arguments that the trial court treated the dispute as a "licensing matter," and denied the plaintiff a forum and a remedy. To the contrary, it addressed, and properly rejected, the merits of the plaintiff's argument that use of the Route 3 right-of-way for the proposed project was beyond the scope of the public highway easement, and it correctly declined to address whether the proposed project will serve the public good because that question is for the DOT to decide in the first instance. See RSA 231:161, I(c), II; Kean, 69 N.H. at 128. As noted above, the plaintiff will have an opportunity to challenge any "public good" licensing determination rendered by the DOT. See RSA 21-L:14-:15, :18; RSA 541:6.

Finally, we reject the plaintiff's argument that the trial court erred by stating that "a public highway easement is not limited solely to 'viatic' use." Rather, it properly rejected the plaintiff's argument that a highway easement is "a right-of-way for 'viatic' use only – in essence, for passage over the land," and that any other use necessarily "exceeds the scope of the easement." As discussed above, the plaintiff's claim that use of a public highway is limited to "passage over the land" is contradicted by well-established New Hampshire law.

Affirmed.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,
Clerk**

6