Cheshire,
June 1, 1937.

ALICE M. BARCLAY *v.* DUBLIN LAKE CLUB.

88

*Howard B. Lane* and *Roy M. Pickard* (*Mr. Lane* orally), for the plaintiff.

*Faulkner & Bell* and *Fred C. Demond* (*Mr. Demond* orally), for the defendant.

MARBLE, J. An option to purchase real estate is a unilateral contract by which the owner of the property agrees to sell if the holder of the option chooses to buy. The latter has "the right to an election," if exercised within a stated or reasonable time, but "is not bound to complete the sale." *Morgan* v. *Forbes*, 236 Mass. 480, 483. See also *New England Box Co.* v. *Prentiss*, 75 N. H. 246; *Kann* v. *Company*, 81 N. H. 535, 539, 540, and cases cited.

By the express provisions of the instrument under consideration the plaintiff and her husband agreed to convey the real estate in question to the defendant upon demand, and the defendant definitely promised to pay the purchase price plus the cost of improvements upon delivery of a deed conveying good title to the premises. The document is a contract of purchase and sale. *Ewins* v. *Gordon*, 49 N. H. 444, 457.

"The meaning of the language being established, an actual intention of a different meaning may not be shown except in an effort to reform the instrument." *Smart* v. *Huckins*, 82 N. H. 342, 348. "Where a contract has been integrated the parties have assented to the written words . . . as the expression of the things to which they agree, therefore the terms of the writing are conclusive, and a contract may have a meaning different from that which either party supposed it to have." Restatement, Contracts, *s.* 230 *b.*

It is important not to ignore this rule when reviewing the evidence on which the defendant apparently relied at the trial. Counsel attach some significance to a letter written to the defendant on September 4, 1935, by an attorney whom the plaintiff had consulted. The material statements in this letter are as follows: "Mrs. Alice M. Barclay has brought to me her contract with the Dublin Lake Club under date of May 25, 1926, covering an option of purchase which the club has on her property on Dublin Lake. Mrs. Barclay is now ready to sell her property and intends to do so at once . . . . She intends to put the property on the market immediately, and unless distinct steps are taken by the Club toward the purchase of the property by the 15th of September she will feel at liberty to negotiate with other prospective purchasers. A statement of the value of the addi-

tions and improvements will be rendered to you if the Club is seriously interested in the purchase of the property."

Concerning the employment of the attorney who wrote this letter the plaintiff testified: "I went to him for advice .... That [the letter] is according to his own wording. I authorized him to write a letter setting forth my willingness to sell the property to the Dublin Lake Club .... I went to him for advice, and he wrote the letter ... he showed [me] a copy afterward .... I didn't find any fault with him, because I decided I would change attorneys."

The contents of the letter, even if fully authorized by the plaintiff, "could neither add to nor diminish" the force of the definitely expressed terms of the agreement. *Furbush* v. *Goodwin*, 25 N. H. 425, 456; *Smart* v. *Huckins*, 82 N. H. 342, 348. The defendant did not change its position by reason of the information conveyed, and the plaintiff cannot therefore be said to have waived her right to insist at this time upon the proper construction of the document. In the absence of an estoppel, waiver "stands like any other undertaking. It must be supported by a consideration or it is not binding upon the party making it." *Duval* v. *Insurance Co.*, 82 N. H. 543, 547.

It is suggested that, although the plaintiff is entitled to a decree, her recovery must be limited to $2,500 since the provision that "should the house on said premises be rebuilt or materially improved ... the cost of such rebuilding or new improvements shall be added to said purchase price" has reference to the renovation or alteration of that particular building, and does not embrace entire new construction. The suggestion is unavailing. To rebuild is "to build again or construct anew," and while the word is sometimes used in the sense for which the defendant contends, it is evident that the parties here contemplated more than mere additions to the old structure or they would not have adopted a phrase which included both "new improvements" and "rebuilding."

At the time the contract was executed a "very wealthy class" of people had summer homes around Dublin Lake. The records of the meetings of the directors of the Dublin Lake Club indicate that the members of the club deemed it to be "of direct interest to the value of the club property" to acquire title to real estate on the shore of the lake. Presumably they did not desire to be surrounded by unsightly premises, and the buildings then standing on the Barclay property consisted of a small camp or cabin ("built forty odd years ago"), a shed, and a barn which had been converted into a sleeping lodge. The clauses of the agreement permitting the plaintiff and her

husband to occupy the premises for life and to make improvements or rebuild at the defendant's expense are to be read in the light of these circumstances. *Borchers* v. *Taylor*, 83 N. H. 564, 567.

There is some evidence to the effect that the chairman of the defendant's board of directors who signed the agreement for the defendant had no authority to execute a contract of purchase and sale, but since the question of authorization was not raised at the trial, it cannot be relied upon now. *Gosselin* v. *Lemay*, 85 N. H. 13, 18.

*Judgment for the plaintiff for $11,095.33.*

BRANCH and WOODBURY, JJ., did not sit: the others concurred.