NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2014-594

JENNIFER PIKE

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE

Argued: May 13, 2015
Opinion Issued: July 15, 2015

Howard & Urbaitis, PLLC d/b/a Courteous Law, of Henniker (Deb Bess Urbaitis on the brief and orally), for the petitioner.

Haughey, Philpot & Laurent, P.A., of Laconia (Christopher J. Fischer on the brief and orally), for the respondent.

DALIANIS, C.J. The petitioner, Jennifer Pike, appeals an order of the Superior Court (McNamara, J.) granting summary judgment to the respondent, Deutsche Bank National Trust Company, as Trustee (Trust), in her action to enjoin the foreclosure sale of real property located in New London. On appeal, the petitioner argues that the trial court erred when it determined that she lacked standing to challenge the assignment of the mortgage to the Trust, and when it declined to enjoin the foreclosure, notwithstanding her assertion that she had a homestead right. See RSA 480:1 (2013) (amended 2015). We affirm.

The parties do not dispute the following facts. The subject property was originally purchased by the petitioner's husband in August 2001. In 2003, the petitioner and her husband granted a mortgage on the property to New Century Mortgage Corporation. In 2004, the petitioner's husband refinanced the mortgage with a mortgage loan from First Franklin Financial Corporation. In February 2007, the petitioner's husband filed for bankruptcy. Although the property had been conveyed between the petitioner and her husband on multiple occasions before the bankruptcy filing, when he filed for bankruptcy, only the petitioner's husband held title to the property by quitclaim deed. In May 2009, the mortgage was assigned to "Deutsche Bank Nation Trust, as Trustee for FFLMT Trust 2005-FF2 Mortgage Pass-through Certificates, Series 2005 FF2." This initial assignment was subsequently corrected. The corrective assignment, dated April 15, 2013, identifies the Trust as the assignee.

On July 2, 2013, the petitioner and her husband divorced. Shortly thereafter, the petitioner obtained the property – by quitclaim deed. On July 11, 2013, the Trust began foreclosure proceedings pursuant to RSA 479:25 (2013). The foreclosure sale was scheduled for December 13, 2013; however, the petitioner obtained a court order temporarily enjoining the sale. That order remains in force.

Thereafter, the Trust moved for summary judgment, arguing that it was entitled to judgment as a matter of law because it holds both the note and the mortgage and is entitled to enforce the same. The trial court ruled in favor of the Trust, and this appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Camire v. Gunstock Area Comm'n, 166 N.H. 374, 376 (2014). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

I. Standing

We first address whether the petitioner has standing to challenge the assignment of the mortgage to the Trust. Under New Hampshire law, "[a] debtor may, generally, assert against an assignee . . . any matters rendering the assignment absolutely invalid or ineffective, . . . but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his shoes." Woodstock Soapstone Co. v. Carleton, 133 N.H. 809, 817 (1991) (quotation and emphases omitted). The petitioner is not the debtor, but asserts that because she is the homeowner, she has the same rights to challenge the assignment as the actual debtor, her ex-husband. For

the purposes of this appeal, we assume without deciding that the petitioner stands in the place of her ex-husband.  Thus, with this assumption, whether the petitioner has standing to challenge the assignment turns upon whether the assignment is void or only voidable.  See id.

The petitioner argues that the assignment is void because the Trust did not comply with its Pooling and Servicing Agreement (PSA).  She asserts that the PSA, which is governed by New York law, requires the Trust to assemble all mortgages in its corpus by a date certain, known as the "closing date."  She contends that the "closing date" relevant to this case was in April 2005, and, because the assignment did not occur until May 2009, more than four years later, the assignment is void under New York law.  See N.Y. Est. Powers & Trusts Law § 7-2.4 (McKinney 2002); see also Aurora Loan Services LLC v. Scheller, No. 2009-22839, 2014 WL 2134576, at *3 (N.Y. Sup. Ct. May 22, 2014) (unreported).  The Trust counters that the Trust's alleged failure to comply with the PSA rendered the assignment merely voidable, not void.  See Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 86-90 (2d Cir. 2014); see also Bank of America Nat. Ass'n v. Patino, No. 2014-03453, 2015 WL 2457886, at *1 (N.Y. App. Div. May 27, 2015).

Generally, a non-party to a contract governed by New York law lacks standing to enforce the contract unless the contract contains clear language evidencing an intent to allow enforcement by such a party, "such as language indicating that the non-party is a third-party beneficiary" of the contract.  Berezovskaya v. Deutsche Bank Nat. Trust Co., No. 12 CV 0655 (KAM), 2014 WL 4471560, at *5 (E.D.N.Y. Aug. 1, 2014).  In the instant case, the petitioner is not a party to the PSA and does not argue that she is a third-party beneficiary of it.  See id.  Rather, she asserts that, because the requirements set forth in the PSA were not followed when the mortgage was transferred to the Trust, the assignment is void and the mortgage and note never became property of the Trust.  See id.  In making this argument, she relies upon a few cases that have concluded that an assignment of a mortgage after the closing date of a trust is void under New York law.  See Wells Fargo Bank, N.A. v. Erobobo, No. 31648/2009, 2013 WL 1831799, at *7-8 (N.Y. Sup. Ct. Apr. 29, 2013) (unreported), rev'd, 127 A.D.3d 1176 (N.Y. App. Div. 2015); Aurora, 2014 WL 2134576, at *3; Glaski v. Bank of America, Nat. Ass'n, 160 Cal. Rptr. 3d 449, 463 (Ct. App. 2013); In re Saldivar, No. 11-10689, 2013 WL 2452699, at *4 (Bankr. S.D. Tex. June 5, 2013).

However, the weight of authority supports the Trust's assertion that the alleged failure to comply with the PSA rendered the assignment merely voidable and not void.  See Rajamin, 757 F.3d at 88, 90 (explaining that "most courts . . . have interpreted New York law to mean that a transfer into a trust that violates the terms of a PSA is voidable rather than void" and citing cases (quotation omitted)); see also Patino, 2015 WL 2457886, at *1; Monchgesang v. Deutsche Bank Nat. Trust Co., No. 14-cv-262-LM, 2015 WL 1578920, at *8-9

(D.N.H. Apr. 9, 2015). This is because, under New York law, "unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries." Rajamin, 757 F.3d at 88. "The principle that a trustee's unauthorized acts may be ratified by the beneficiaries is harmonious with the overall principle that only trust beneficiaries have standing to claim a breach of trust." Id. at 89. "If a stranger to the trust also had such standing, the stranger would have the power to interfere with the beneficiaries' right of ratification." Id. Thus, under New York law, because "a trust's beneficiaries may ratify the trustee's otherwise unauthorized act," and because "a void act is not subject to ratification," an unauthorized act by a trustee "is not void but merely voidable by the beneficiary." Id. (quotation omitted); see Butler v. Deutsche Bank Trust Co. Americas, 748 F.3d 28, 37 n.8 (1st Cir. 2014) (observing that "the vast majority of courts to consider the issue" have concluded that, under New York law, "the acts of a trustee in contravention of a trust may be ratified, and are thus voidable").

The cases upon which the petitioner relies do not address, or even consider, the well-settled rule that a beneficiary may ratify a trustee's ultra vires act, thus making such an act voidable, rather than void. See Berezovskaya, 2014 WL 4471560, at *7 (referring to Erobobo and Saldivar); see also Aurora, 2014 WL 2134576, at *3; Glaski, 160 Cal. Rptr. 3d at 463-64. Further, the principal case upon which the petitioner relies, Erobobo, 2013 WL 1831799, at *7-8, has been reversed. See Wells Fargo Bank, N.A. v. Erobobo, 127 A.D.3d 1176 (N.Y. App. Div. 2015). Additionally, the "vast majority of courts analyzing" Glaski, 160 Cal. Rptr. 3d at 463-64, "have found it unpersuasive" and have rejected its analysis. Kan v. Guild Mortg. Co., 178 Cal. Rptr. 3d 745, 751 (Ct. App. 2014) (citing cases).

Thus, we join those courts that have concluded that, under New York law, "an action that violates the term of a trust agreement, such as a transfer of a loan to a trust after the trust's closing date, renders the transaction voidable at the election of either party to the agreement," and that "a non-party to the PSA," such as the petitioner in this case, "does not have standing to challenge such a transaction." Berezovskaya, 2014 WL 4471560, at *8; see In re Davies, 565 F. App'x 630, 633 (9th Cir. 2014) (collecting cases and concluding that California Supreme Court would likely follow "the weight of authority" holding that borrowers who are not parties to PSAs cannot challenge them); In re Correia, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (debtors lack standing to raise violations of a PSA).

II. Homestead Right

We next address whether the trial court erred when it denied the petitioner's request that the court enjoin the foreclosure, despite her assertion of her homestead right. See RSA 480:1 (providing that "[e]very person is entitled to $100,000 worth of his or her homestead, or of his or her interest

4

therein, as a homestead").  "The issuance of injunctions, either temporary or permanent, has long been considered an extraordinary remedy."  ATV Watch v. N.H. Dep't of Resources & Econ. Dev., 155 N.H. 434, 437 (2007) (quotation omitted).  "An injunction should not issue unless there is an immediate danger of irreparable harm to the party seeking injunctive relief, there is no adequate remedy at law[,] and the party seeking an injunction is likely to succeed on the merits."  Id. (quotation, ellipses, and brackets omitted).  The trial court retains the discretion to decide whether to grant an injunction "after consideration of the facts and established principles of equity."  Id. at 437-38 (quotation omitted).  "We will uphold the decision of the trial court with regard to the issuance of an injunction absent an error of law, unsustainable exercise of discretion, or clearly erroneous findings of fact."  Dupont v. Nashua Police Dep't, 167 N.H. ___, ___, 113 A.3d 239, 243 (2015) (quotation and brackets omitted), petition for cert. docketed (U.S. May 26, 2015).

The trial court determined that the petitioner was not entitled to a permanent injunction because she failed to establish that, if the foreclosure occurred, she was in "immediate danger of irreparable harm."  ATV Watch, 155 N.H. at 437 (quotation omitted).  The court explained that the foreclosure proceeding itself would not result in the "automatic ejectment" of the petitioner, and, thus, her "right to remain in the premises is not jeopardized by the foreclosure proceedings," and "her assertion of her homestead interest in the property is premature."

The petitioner does not challenge this determination directly.  Instead, she argues that "[a]llowing [the Trust] to foreclose without assurance that [she] will receive the benefit of her homestead right is unjust," and asks that we allow the injunction to remain in place so that she can be given "assurances about how [her] homestead right will be preserved."  She posits that "[i]f the injunction remains in place, she could either remain in the home indefinitely or an order could be issued mandating that the [respondent] pay [her] for her $100,000 homestead exemption as a condition of the injunction being lifted."  Proceeding in this manner, the petitioner contends, "fulfills the interest of judicial economy."

The petitioner's arguments fail to persuade us that the trial court unsustainably exercised its discretion or erred as a matter of law when it denied her request that the court enjoin the foreclosure.  As the Trust explains, assuming that the petitioner "brings and prevails in a proceeding under RSA 480:8-a, the fact that the foreclosure took place" will not impair her alleged homestead right.  See RSA 480:8-a (2013) (empowering the superior court, "upon petition of the owner of a homestead or the wife or husband surviving such owner, or upon petition of a judgment creditor and such notice as it may order" to "appoint appraisers and cause the homestead right to be set off, and a record of the proceedings being made in the registry of deeds, the right shall be established as against all persons").  Nor will the foreclosure automatically

5

result in the petitioner's removal from the home.  Thus, we cannot say that the trial court erred when it determined that the petitioner failed to show that she would be in immediate danger of irreparable harm if the foreclosure were to proceed.

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.