**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0389, <u>Michael Askenaizer, as Trustee of Chapter 7 Estate of Focus Capital, Inc. v. Foy Insurance Group, Inc. & a.</u>, the court on February 23, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The plaintiff, Michael Askenaizer, trustee in bankruptcy of Focus Capital, Inc. (Focus), appeals an order of the Superior Court (<u>Colburn</u>, J.) granting summary judgment in favor of the defendants, Foy Insurance Group, Inc. (Foy Insurance), Mercator Risk Services, Inc. (Mercator), and Preferred Concepts, LLC (Preferred), on the basis that the plaintiff's claims are time-barred. <u>See</u> RSA 508:4 (2010). We affirm in part, vacate in part, and remand.

In reviewing an order granting summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from such evidence, in the light most favorable to the nonmoving party. <u>Pike v. Deutsche Bank Nat'l Trust Co.</u>, 168 N.H. 40, 42 (2015). We review the trial court's application of law to the facts <u>de</u> <u>novo</u>. <u>Id</u>. If our review of the evidence discloses no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law, we will uphold the trial court's order. <u>Id</u>. An issue of fact is "material" if it affects the outcome of the case under applicable substantive law. <u>Lynn v. Wentworth By The Sea Master Ass'n</u>, 169 N.H. 77, 87 (2016).

RSA 508:4 provides:

> Except as otherwise provided by law, all personal actions . . . may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. Under RSA 508:4, the defendant bears the initial burden to establish that the action was not brought within three years of the challenged

act or omission.  See Beane v. Dana S. Beane & Co., 160 N.H. 708, 712 (2010). Once the defendant has satisfied that burden, the plaintiff bears the burden to establish that the "discovery rule" applies.  Id. at 713.  Under the discovery rule, the limitations period is tolled until the plaintiff discovers, or reasonably should have discovered, both the injury and its causal connection to the allegedly negligent or wrongful act.  Id.  "[A] plaintiff need not be certain of this causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule."  Id. (quotation omitted).

The record in this case establishes that Focus was a wealth management advisory firm that operated from 2001 to 2012.  Between 2009 and 2011, it managed assets valued at between $22 million and $60 million.  Its founder and principal, Nicholas Rowe, obtained "errors and omissions" policies through Foy Insurance, an insurance broker operated by Michael Foy.  According to the uncontested affidavits of both Rowe and Foy, when Rowe began Focus, he requested that Foy Insurance procure an errors and omissions policy with a coverage limit of $1 million per claim, the same coverage he had had under policies at prior employers.  Although he occasionally requested quotes at other limits, Rowe did not seek advice regarding the types or amounts of insurance coverage he should procure, but instead determined such matters on his own.

In 2010, Foy Insurance procured a "claims made" errors and omissions policy through Mercator, a wholesale broker, from Twin City Fire Insurance Company (Twin City), for the period of time beginning on May 31, 2010 and ending on May 31, 2011.  Preferred, another wholesale broker, subsequently acquired some of Mercator's assets.  Rowe did not communicate or have any contact with Mercator or Preferred.  The policy had a per-claim coverage limit of $1 million and an aggregate limit of $2 million, inclusive of defense costs.  The policy specifically provided that claims "based upon, arising from or in any way related to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim**."  It defined **Wrongful Act** to include "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty by the **Insureds** in the performance of **Investment Adviser** . . . **Professional Services**," and defined "**Interrelated Wrongful Acts**" as

> **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.  Logically connected facts, circumstances, situations, events, transactions or causes shall be deemed to be those facts, circumstances, situations, events, transactions or causes which share a common and central goal, motive or methodology.

In November 2010, one of Focus's investors sent it a letter demanding damages of $1,945,000 for allegedly mishandling investments (November 2010

2

claim).  Focus notified Twin City of the claim.  Subsequently, Foy Insurance procured a three-month extension, but not a renewal, of the policy.  During this extension, on July 13, 2011, several investors, including the investor who had asserted the November 2010 claim, commenced arbitration against Focus, alleging several claims regarding alleged mismanagement of investments (July 2011 claims).  Focus notified Twin City of the July 2011 claims.

In August 2011, Foy Insurance procured a second extension, but not a renewal, of the policy.  At the time of the second extension, Rowe expressed confusion regarding whether the extension would provide coverage "for a new event."  A representative of Foy Insurance explained that the insurer had extended the policy "with the same coverage limits," rather than issuing a new policy, in light of the pending claims, that there would be "no lapse in coverage and no change in coverage," and that the coverage would be "in effect for any new incidents that may happen."  Rowe understood the explanation to mean that the extension was "like a new policy and it covers any new events."  Foy Insurance subsequently procured a third extension of the policy.  The policy expired on February 29, 2012, with Focus obtaining "tail" coverage on it.

On April 24, 2012, Twin City notified Focus that the November 2010 claim and July 2011 claims each alleged the same wrongful act or interrelated wrongful acts and, thus, that they constituted a single "claim" for purposes of the policy's $1 million per claim limit.  Thereafter, the claimants in the July 2011 arbitration sought a declaratory judgment against the insurer that they were entitled to the $2 million aggregate coverage limit.  The record does not reflect whether or how the declaratory judgment action was resolved.

In November 2012, the New Hampshire Secretary of State filed suit against Focus and Rowe, seeking a temporary restraining order, injunctive relief, asset freeze, and appointment of a receiver.  Pursuant to a settlement of that matter, Focus ceased operations and was ordered to pay restitution to former clients.  Focus filed for Chapter 11 bankruptcy protection on December 4, 2012, and the case was converted to a Chapter 7 case in April 2013.

The plaintiff trustee in bankruptcy filed the present matter on April 23, 2015.  In count I, captioned "Negligent Procurement – Foy Insurance," the plaintiff asserted that Focus relied upon Foy Insurance to provide coverage advice, and that Foy Insurance was negligent in procuring a policy that it knew or should have known provided insufficient coverage in light of the more than $20 million in assets that Focus managed.  In count II, captioned "Negligent Procurement – Foy, Mercator, Preferred Concepts," the plaintiff asserted that Focus requested Foy Insurance, Mercator, and Preferred to obtain insurance that was adequate for the assets it managed, that Focus requested the defendants to procure additional coverage as part of the renewal process, that the defendants failed to advise that Twin City "would consider . . . all claims made related to investment advice . . . as a single claim . . . and Focus . . .

3

would not obtain the benefit of the full $2 million aggregate limit for the initial policy period," that the policy extensions did not provide the additional coverage Focus requested, and that the defendants knew or should have known that the policy was insufficient "to meet [Focus's] specific request . . . for additional coverage." Finally, in count III, the plaintiff asserted that Foy Insurance, Mercator, and Preferred breached a contract "to procure insurance in accordance with [Focus's] instructions."

The defendants moved for summary judgment. Mercator and Preferred argued that they had neither a contract with Focus nor a "special relationship" with it that might give rise to a duty to provide insurance coverage advice, see Sintros v. Hamon, 148 N.H. 478, 480-83 (2002), and that the April 23, 2015 lawsuit, filed more than three years after Focus purchased the policy and the extensions, and more than three years after the November 2010 claim and July 2011 claims, was untimely. Foy Insurance likewise argued that, under Sintros, there was no special relationship giving rise to a duty to provide insurance advice, and that, pursuant to the affidavits of both Rowe and Foy, Foy Insurance procured the insurance coverage that Rowe requested.

In its order on summary judgment, the trial court characterized the plaintiff's position as "assert[ing] that the defendants failed to deliver a $1,000,000 per claim policy as requested by Focus, misrepresented the policy extensions thereafter, and failed to advise Focus that the Policy was insufficient considering the assets under its management at that time." In granting summary judgment, the trial court addressed only the timeliness of the case, ruling that Focus reasonably should have discovered that its coverage was inadequate no later than July 13, 2011, when it received notice of the July 2011 claim. The trial court emphasized Focus's obligation to review its policy and to read it as would a reasonable person in the position of the insured. The trial court observed that the $2 million aggregate coverage limit was less than Focus's largest account, and substantially less than the total value of the accounts it was managing when it obtained the policy in 2010. The trial court further observed that "a cursory review of the interrelationship of claims section in conjunction with the definitions section would have further informed a reasonable man that, in most instances, the Policy was limited to $1,000,000 of coverage regardless of the number of claims and claimants," and that Focus had "superior sophistication and expertise with respect to financial matters." Because the November 2010 claim sought nearly $2 million and the July 2011 claims were "well in excess of both the per claim and aggregate limits of liability under the policy," the trial court ruled that Focus knew or should have known that "the insurance coverage under the Policy was insufficient with respect to the various claims asserted against it" no later July 13, 2011.

On appeal, the plaintiff argues that Focus could not reasonably have discovered its claims that the defendants "failed to deliver a $1,000,000 per claim policy as requested by Focus" and "misrepresented the policy extensions"

4

until Twin City advised it on April 24, 2012 that it deemed the November 2010 claim and the July 2011 claims to have arisen from interrelated wrongful acts. The April 24, 2012 letter, the plaintiff contends, "raised, for the first time, the very real prospect that Focus might end up with only $1 million in total liability insurance coverage for the various claims that were being made" rather than the $1 million per claim coverage that it had requested. Neither the policy nor the November 2010 and July 2011 claims, according to the plaintiff, put Focus on notice of its claims that the defendants failed to provide a $1 million per claim policy and misrepresented the effect of the policy extensions. Moreover, the plaintiff asserts that the trial court's finding that "a cursory review of the interrelationship of claims section [of the policy] . . . would have . . . informed a reasonable man that, in most instances, the Policy was limited to $1,000,000 of coverage regardless of the number of claims and claimants" was erroneous as a matter of law. Finally, the plaintiff argues that the misrepresentation claim was not premised upon the 2010 procurement of the policy, but upon alleged misrepresentations in August 2011, which the plaintiff argues Focus could not reasonably have discovered until it received the April 24, 2012 letter, as to whether the extensions provided coverage as to "new events."

At the outset, we note that the plaintiff does not challenge the trial court's ruling that the claims that the defendants "failed to advise Focus that the Policy was insufficient considering the assets under its management" are time-barred. Accordingly, we uphold the trial court's order to the extent it granted summary judgment as to those claims. We further note that, notwithstanding the trial court's characterization of the plaintiff's position as asserting that the defendants "misrepresented the policy extensions," the plaintiff pleaded no misrepresentation claim in the complaint. We reject the plaintiff's arguments, therefore, that the trial court erred by granting summary judgment as to a misrepresentation claim.

We agree with the plaintiff, however, that "a cursory review of the interrelationship of claims section in conjunction with the definitions section" of the policy would not have put a reasonable person on notice that, "in most instances, the Policy was limited to $1,000,000 of coverage regardless of the number of claims and claimants." Although we express no opinion as to whether any of the underlying investor claims in this case, including the November 2010 claim and July 2011 claims, in fact constituted a single claim under the terms of the policy, the interrelationship of claims provisions of the policy were not so clear as to put Focus on notice that its aggregate coverage was necessarily limited to $1 million "in most instances." See Financial Management v. American Intern. Specialty, 506 F.3d 922, 926 (9th Cir. 2007) (rejecting insurer's argument that claims by different investors against a single investment advisor necessarily arose out of related wrongful acts merely because the claimants were persuaded to invest in same investment fund by the same investment advisor).

We conclude, therefore, that the trial court erred to the extent that it found that the policy put Focus on notice that its total coverage was limited to $1 million "in most instances" and, thus, rejected the plaintiff's discovery rule argument with respect to claims that the defendants failed to procure a policy with $1 million of coverage per claim.  Accordingly, we vacate the trial court's order only to the extent that it granted summary judgment with respect to claims alleging that the defendants failed to procure a policy providing coverage of $1 million per claim, and remand for further proceedings consistent with this order.  Because the trial court has not yet ruled upon the alternative grounds raised by the defendants in their summary judgment motions, we decline to rule upon those grounds for the first time on appeal.

<u>Affirmed in part; vacated in part; and remanded</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**