NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Grafton
No. 2018-0648


THE SKINNY PANCAKE-HANOVER, LLC

v.

CROTIX & a.

Argued: June 6, 2019
Opinion Issued: July 11, 2019


Sheehan Phinney Bass & Green, P.A., of Manchester (James P. Harris and Patrick J. Queenan on the brief, and Mr. Harris orally), for the plaintiff.


Cleveland, Waters and Bass, P.A., of Concord (Bryan K. Gould and Cooley A. Arroyo on the brief, and Mr. Gould orally), and Schuster, Buttrey & Wing, P.A., of Lebanon (Barry C. Schuster on the brief), for the defendants.


LYNN, C.J.  The plaintiff, The Skinny Pancake-Hanover, LLC, appeals decisions of the Superior Court (Bornstein, J.) that granted partial summary judgment to the defendants, Crotix and James and Susan Rubens, on the plaintiff's breach of contract claim, and that dismissed the plaintiff's claim against the defendants for breach of the implied covenant of good faith and fair dealing.  We affirm.

The relevant facts follow.  On October 15, 2015, the plaintiff entered into a lease with the defendants for a single unit in the Hanover Park Condominium building.  The lease gave the plaintiff the option to purchase its rental unit along with certain other units in the building.  Specifically, the option provided that:

> Within the first nine (9) months from Lease Commencement Date, Tenant shall have the exclusive option to purchase all Hanover Park Condominium units then owned by Landlord . . . in AS IS condition for $5,553,570 . . . .  After 180 days from Commencement Date, this Purchase Option shall expire if there is no signed Purchase & Sale Agreement.

On May 20, 2016, the plaintiff sent the defendants a letter to "give formal notice of Tenant's intent to exercise its purchase option" under the lease.  Included with the letter was a Purchase and Sale Agreement that provided for certain conditions to be met prior to closing, including a 90-day due diligence period during which the plaintiff could perform inspections, and further providing that the plaintiff may, in its "sole discretion, on or before the expiration of the Due Diligence Period elect to . . . terminate [the] Agreement by providing written notice [of] termination to [the defendants] . . . , in which case all of the rights and obligations of the parties to [the] Agreement" would cease and terminate.  By letter dated May 26, 2016, the defendants "declined" the plaintiff's request, stating that the plaintiff's attempted exercise of the option was untimely under the terms of the agreement.

In response, on May 28, the plaintiff sent the defendants an e-mail stating that it was hoping to "avoid a lengthy argument over this as the evidence is so overwhelmingly in favor of our position and we are absolutely committed to whatever means necessary to exercise our option."  On July 19, the plaintiff sent the defendants a letter demanding that they convey the property, emphasizing that the defendants were "obligated to sell the Property upon" the plaintiff's exercise of the option on May 20.  The defendants responded by stating that "[t]he terms of the option to purchase [were] clearly set forth in the Lease and, in order for [the plaintiff] to benefit from the terms of that option, it was required to perform according to those terms."

In September 2016, the plaintiff filed a verified complaint in superior court asserting: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation (fraud); (4) negligent misrepresentation; and (5) violation of the Consumer Protection Act (CPA), RSA chapter 358-A.  According to the plaintiff, the May 20 letter provided the defendants with notice of its "intent to exercise its Option to Purchase" and obligated them to sell the property.  In their answer, the

defendants asserted that the May 20 correspondence was insufficient to trigger their obligations because "[n]either the letter nor the proposed purchase and sale agreement accepted the terms of the Purchase Option but offered numerous conditions and terms."

Thereafter, the parties engaged in extensive litigation. First, the parties cross-moved for summary judgment, which the court denied because, in its view, there were genuine issues of fact as to what date constituted the commencement date for purposes of the agreement, and there also were issues of fact concerning the plaintiff's good faith and fair dealing claim. In October 2017, the court denied the defendants' motion for partial dismissal of the breach of the good faith and fair dealing claim. In reaching this decision, the court was guided by the plaintiff's assertion that this claim was not based on the defendants' performance under the contract, but rather was based on the defendants' breach of the covenant during contract formation.

In January 2018, the court granted in part the defendants' second motion to dismiss. The court dismissed the plaintiff's claims for intentional misrepresentation (fraud) and for violation of the CPA, but did not dismiss the claims for breach of the implied covenant of good faith and fair dealing and for negligent misrepresentation. As to the good faith and fair dealing claim, the court reiterated that, as explained by the plaintiff in its objection to the first motion to dismiss, this claim was predicated on the defendants' alleged bad faith actions with respect to contract formation, not contract performance. The court later denied the plaintiff's motion to amend its complaint to add allegations of breach of the covenant with respect to the defendants' performance under the contract. According to the court, "the proposed amendments would introduce a new cause of action that the plaintiff ha[d] repeatedly disclaimed" up until that point and would prejudice the defendants.[1]

In July 2018, the court granted the defendants' motion for partial summary judgment on the plaintiff's breach of contract claim. The court agreed with the defendants' argument that no breach occurred because the plaintiff never properly invoked its option. The court ruled that the plaintiff's May 20 correspondence was insufficient because it was not an unconditional acceptance in accordance with the terms of the option provision of the lease. The court also rejected the plaintiff's arguments that its later correspondence operated as an acceptance because these later demands were "explicitly tethered to the May 20" correspondence. The court reasoned that these later attempts were "all ineffective because none of them were unequivocal, unconditional, and in accord with the terms of the option agreement." The court concluded that the plaintiff's reliance on Livingston v. 18 Mile Point Drive, 158 N.H. 619 (2009), was misplaced because that case "involved a

---

[1] The plaintiff waived its negligent misrepresentation claim in its July 2018 pretrial statement.

3

party's breach of a contract's implied covenant of good faith and fair dealing concerning the limits on discretion in contractual performance," whereas the basis for granting summary judgment on the breach of contract claim was unrelated to the improper exercise of discretion in contract performance.

In a subsequent order, the court dismissed the plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Relying on its decision that no breach of contract occurred because the plaintiff never properly invoked its option rights, the court ruled that, as a matter of law, the plaintiff could not prevail on its good faith and fair dealing claim. The court reasoned that, absent a breach of contract, the causal link necessary to establish harm resulting from breach of the implied covenant of good faith and fair dealing was missing. Specifically, the court determined that it was the plaintiff's failure to properly invoke its option rights, rather than the defendants' conduct during contract formation, that deprived the plaintiff "of the benefit of the option to purchase." The court rejected the plaintiff's claim that a new contract formed when it sent the May 20 correspondence, reasoning that no new contract had formed because this conduct did not properly exercise the plaintiff's option. In addition, the court again articulated that the defendants' conduct in 2016 was not the subject of the plaintiff's good faith and fair dealing claim because that claim focused solely on the events surrounding contract formation, and again found Livingston distinguishable because that case dealt purely with contract performance. This appeal followed.

II

Because the trial court's decision granting partial summary judgment on the plaintiff's breach of contract claim necessarily informed its decision to dismiss the good faith and fair dealing claim, we address the former ruling first. "In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Pike v. Deutsche Bank Nat'l Trust Co., 168 N.H. 40, 42 (2015). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. "We review the trial court's application of the law to the facts de novo." Id.

"An option to purchase real estate is a unilateral contract by which the owner of the property agrees to sell if the holder of the option chooses to buy." Barclay v. Dublin Lake Club, 89 N.H. 87, 89 (1937); see 1 Richard A. Lord, Williston on Contracts § 5:16, at 1022 (4th ed. 2007) (noting that the "traditional view regards an option as a unilateral contract which binds the optionee to do nothing, but grants him or her the right to accept or reject the offer in accordance with its terms within the time and in the manner specified in the option"). "Although an option contract is by definition binding as a

4

contract, it is also an offer, and like other offers, its terms must be accepted in order to make the main contract binding." Lord, supra § 5:16, at 1034. "The exercise of an option to buy or sell real estate must be absolute, unambiguous, without condition or reservation, and in accordance with the offer made," State Securities Co. v. Daringer, 293 N.W.2d 102, 105 (Neb. 1980), because "[n]othing less than an unconditional and precise acceptance will suffice unless the optionor waives one or more of the terms of the option," Lord, supra § 5:18, at 1054-55. "Therefore, no duty to perform arises in the optionor until the optionee accepts the irrevocable offer embodied in the option," Stapleton v. Macchi, 519 N.E.2d 273, 275 n.6 (Mass. 1988); in the absence of a valid acceptance, "there has been no exercise of the option, and no valid contract has been formed," Pargar, LLC v. CP Summit Retail, LLC, 730 S.E.2d 136, 140 (Ga. Ct. App. 2012) (quotation omitted).

The plaintiff argues that the trial court erred in concluding that its May 20 correspondence was conditional and therefore an ineffective invocation of the option. Although the plaintiff's May 20 correspondence expressed its "intent to exercise its purchase option" rights under the lease, the included purchase and sales agreement not only placed certain conditions on its acceptance but also gave the plaintiff the "sole discretion" to unilaterally terminate the agreement should those conditions not be met in a manner that satisfied the plaintiff. This conditional reservation of the right to terminate is insufficient, see State Securities Co., 293 N.W.2d at 105, because it added terms not included in the original offer, see 17A Am. Jur. 2d Contracts § 81, at 107-08 (2004) (noting acceptance of the option cannot introduce additional terms). In practical effect, the May 20 correspondence operated "not [as] an acceptance" but as "a counter-offer." Restatement (Second) of Contracts § 59, at 145 (1981); cf. Morris v. Goldthorp, 60 N.E.2d 857, 861 (Ill. 1945) (explaining that purported acceptance of option was not an acceptance but rather a counteroffer where attempted acceptance requested transfer of property by warranty deed but option was silent as to the type of deed by which the property would be conveyed). Thus, even if the May 20 correspondence expressed the plaintiff's general intent to exercise the option, the attached purchase and sales agreement communicated that this general intent to accept was conditioned upon the additional terms. Accordingly, the trial court did not err in concluding that the May 20 correspondence was an ineffective exercise of the option.[2]

---

[2] The plaintiff's claim that the trial court erred in interpreting the phrase "as is" in its order on the plaintiff's motion to reconsider overlooks the fact that this reasoning was a separate and alternate ground for denying the motion — the other being that this new argument was untimely raised for the first time in its surreply. See Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."). Denying the motion on this procedural ground alone was proper and we therefore do not reach the issue of whether the trial court properly interpreted the "as is" term of the contract.

Nor do we agree with the plaintiff that its subsequent correspondence to the defendants was sufficient to exercise its option rights. To start, we note that the claim that the plaintiff's subsequent statements to the defendants legally operated to accept the option was not originally pled in the plaintiff's complaint. Rather, the plaintiff's complaint only referenced the May 20 correspondence. Moreover, the plaintiff unsuccessfully attempted to include these new allegations in an amended complaint but the trial court denied the motion. Although the issue of whether the trial court erred in denying the plaintiff's motion to amend was raised in the plaintiff's notice of appeal, it was not briefed and is therefore deemed waived. See Town of Londonderry v. Mesiti Dev., 168 N.H. 377, 380-81 (2015).

Nevertheless, the trial court properly concluded that the plaintiff's subsequent attempts to exercise the option were ineffective because they all were premised on the May 20 correspondence. As the trial court pointed out, the later communications made clear that the "option was exercised by [the] letter dated May 20, 2016." In addition, the plaintiff's May 28 e-mail cannot constitute an acceptance by itself because it was not "a manifestation of assent to the terms" of the option, Restatement (Second) of Contracts, supra § 50(1), at 128, but rather an expression of hope. "It is not enough that the words of a reply justify a probable inference of assent." Id. § 57 cmt. b at 143. Rather, acceptance must be both absolute, see State Securities Co., 293 N.W.2d at 105, and precise, Lord, supra § 5:18, at 1054-55, in order to be effective.

Lastly, to the extent that the plaintiff argues that the rationale of Livingston applies to its breach of contract claim, we are unpersuaded. Livingston deals with the duty of good faith and fair dealing. See Livingston, 158 N.H. at 624. The plaintiff argues that the defendants breached this duty by failing to properly respond to the plaintiff's attempted exercise of the option. But this argument is entirely premised on the theory that the defendants' bad faith arose in the context of their contract performance. However, the trial court rejected the plaintiff's attempt to amend its complaint to include a count alleging that the defendants breached the duty of good faith and fair dealing in their performance of the contract. This denial was based on the fact that the amendment would introduce a new cause of action and would contradict the plaintiff's previously asserted position that the allegations contained in its complaint did not concern contract performance but, rather, contract formation. The plaintiff cannot now evade this ruling by attempting to mix legal principles that we have previously held are distinct from each other. See id.

In sum, we conclude that the trial court did not err in determining that the plaintiff's subsequent communications did not effectively exercise its option rights.

Turning next to the trial court's dismissal of the plaintiff's good faith and fair dealing claim, "our standard of review is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." Sanguedolce v. Wolfe, 164 N.H. 644, 645 (2013). "We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to him." Id. "We need not assume the truth of statements in the plaintiff's pleadings, however, that are merely conclusions of law." Id. "We then engage in a threshold inquiry that tests the facts in the writ against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss." Id.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another." Livingston, 158 N.H. at 624. New Hampshire does not merely have "one rule of implied good-faith duty." Id. Rather, our jurisprudence consists of "a series of doctrines, each of which serves different functions." Id. These doctrines fall into three categories: "(1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance." Id. The plaintiff's complaint alleged a breach of duty falling under the first category. The pertinent obligation therefore is "tantamount to the traditional duties of care to refrain from misrepresentation and to correct subsequently discovered error, insofar as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989) (citing Bursey v. Clement, 118 N.H. 412, 414 (1978)).

The plaintiff argues that the trial court erred in dismissing its good faith and fair dealing claim because the defendants acted improperly by initially failing to inform the plaintiff of their view that the plaintiff's proposed purchase and sale agreement and subsequent communications did not comply with the terms of the option in aspects other than untimeliness. The plaintiff's position might have merit had its claim been one for breach of the good faith and fair dealing doctrine concerning the defendants' performance. But as noted above, the plaintiff's complaint alleged a breach of the first category — contract formation. The plaintiff's attempt to amend its complaint to allege a breach of the performance category, on which its argument on appeal is structured, was denied by the trial court. As the trial court recognized, the amendment would introduce an entirely new cause of action, see Bel Air Assocs. v. N.H. Dep't of Health & Human Servs., 154 N.H. 228, 236 (2006) (holding that a trial court may properly deny a substantive amendment where it introduces a new cause of action), because the three good faith doctrines all serve separate and distinct functions, Livingston, 158 N.H. at 624. As noted above, while the trial court's denial of the amendment was raised in the plaintiff's notice of appeal, it was

not briefed and is therefore deemed waived.  See Town of Londonderry, 168 N.H. at 380-81.  Nevertheless, that denial was not an unsustainable exercise of discretion because the amendment would have added a new cause of action, Bel Air Assocs., 154 N.H. at 236, and likewise contradicted the plaintiff's previous argument that its claims centered only on the contract formation.

Furthermore, the plaintiff has failed to articulate any argument addressing the trial court's actual decision to dismiss its claim of good faith and fair dealing concerning contract formation.  Complaints about adverse rulings without developed legal argument are insufficient to warrant appellate review.  See Douglas v. Douglas, 143 N.H. 419, 429 (1999).  We therefore decline to review the issue on appeal.

Affirmed.

HICKS, BASSETT, and DONOVAN, JJ., concurred.